COMMONWEALTH *vs.* PIERRE VICTOR BRUNELLE.

Middlesex.   October 5, 1971. — January 13, 1972.

Present: TAURO, C.J., CUTTER, SPIEGEL, REARDON, QUIRICO, BRAUCHER, & HENNESSEY, JJ.

*Abortion. Constitutional Law,* Abortion, Who may question constitutionality. *Evidence,* Burden of going forward. *Practice, Criminal,* Charge to jury, Deliberation of Jury.

In a prosecution under G. L. c. 272, § 19, the defendant has the burden of going forward to show that he has a defence or justification for acting in apparent violation of the statute.   [9]

Where one performing an abortion is not a licensed physician, mere proof of his act ordinarily would be sufficient to establish its illegality.   [9–10]

One who was not a licensed physician and to whom G. L. c. 272, § 19, might be constitutionally applied had no standing to challenge the constitutionality of § 19 as applied to licensed physicians.   [10–11]

Although the judge at the trial of an indictment for violation of G. L. c. 272, § 19, should not have stated to the jury that the intent of § 19, "is to prevent attempts to destroy human beings in the womb of the mother," the remark was harmless when viewed in the context of otherwise proper instructions on the relevant legal issues. [11–12]

No abuse of discretion appeared in a criminal case in reading to the jury, with respect to their deliberations, the charge in *Commonwealth* v. *Tuey,* 8 Cush. 1, where no special circumstances appeared to make such a charge inappropriate.   [12]

INDICTMENT found and returned in the Superior Court on May 12, 1969.

A motion to dismiss the indictment was denied by *Moynihan, J.*

The case was tried before *Tomasello, J.*

*Joseph S. Oteri* (*Mitchell Benjoya* with him) for the defendant.

*Terence M. Troyer,* Assistant District Attorney, for the Commonwealth.

CUTTER, J.   Brunelle (see *Commonwealth* v. *Brunelle,* 341 Mass. 675) was indicted for violation of G. L. c. 272, § 19,[1] in using an instrument upon the body of a woman (the young woman) with intent to procure an abortion. On February 26, 1970, a Superior Court judge (the motion judge) denied a substitute motion [2] to dismiss the indictment.   He heard medical evidence concerning (a) current methods of accomplishing abortions and (b) the greatly increased safety of certain types of abortion. There was also testimony about somewhat varying medical views on abortion.   The judge declined to receive evidence concerning (a) the alleged interference of § 19 with the practice of religion, (b) the background of § 19, (c) the experience of certain psychiatrists, sociologists, and others based on this statute and similar statutes,

---

[1] General Laws c. 272, § 19, reads: "Whoever, with intent to procure the miscarriage of a woman . . . unlawfully uses any instrument or other means whatever, or, with like intent, aids or assists therein, shall . . . be punished . . . ."

[2] The motion alleged c. 272, § 19, to be unconstitutional (1) as expressing in a statute a "solely moral judgment peculiar to one religion," (2) as "not suited to achieve any valid legislative" purpose in view of the absence of evidence that medically supervised miscarriages constitute a threat to health, (3) that the statute goes beyond protecting against dangers to the public health, safety, or morals, (4) that, on moral grounds, the statute "interferes with the free exercise of [a] doctor's medical judgment and with the rights of the patient to health and happiness," (5) that § 19 "discriminates against poor people" who cannot afford to retain physicians and psychiatrists, forcing them "to resort to . . . untrained, criminal abortionists," (6) that it compels citizens "to complete an unwanted pregnancy," (7) that § 19 invalidly proscribes freedom of speech concerning abortions, (8) that § 19 imposes "cruel and unusual punishment," (9) that it violates the right of privacy and freedom of choice in "the area of private morality," and (10) that § 19 is "arbitrary and vague." See, however, *United States* v. *Vuitch,* 402 U. S. 62, 71–73.

(d) the restraints on medical prescription and treatment [3] imposed by the statute, (e) the statute's effect on privacy, and (f) the statute's vagueness. [4]

A second Superior Court judge, who presided at trial (the trial judge) reaffirmed the denial of the motion to dismiss. A jury found Brunelle guilty. He appealed. The case is before us under G. L. c. 278, §§ 33A–33G, on assignments of error based on rulings both of the motion judge and of the trial judge.

The jury could have found the following facts. On May 1, 1969, the young woman went with two friends to Brunelle's house in Chelmsford. She was pregnant and desired an abortion. She had been "upset" but was not mentally ill or emotionally disturbed. Brunelle told her that he would perform an abortion, "a D & C" (dilation and curettage), and that the operation "was illegal, and . . . no one should be told about it." He said that "he would insert certain instruments into her" and that "a complete abortion would be performed." The young woman lay on an examining table and Brunelle inserted the instruments into her vaginal area. She "felt them . . . being inserted." Afterward he gave her some medication and told her that she "had completely aborted." A male friend of the young woman paid Brunelle $600.

---

[3] On this subject the motion judge gave one medical expert from New York, who testified on December 10, 1969, substantial leeway to testify about the restraints imposed by G. L. c. 272, § 19, upon "the free exercise of . . . [his] medical judgment in prescribing for . . . patients."

[4] Brunelle's counsel submitted an extended offer of proof concerning the expected testimony of certain theological witnesses, not permitted to testify. These included the Right Reverend Anson Phelps Stokes, Episcopal Bishop of Massachusetts; Rabbi Sanford Seltzer of Brookline; Dr. Robert West, President of the Unitarian Universalist Association; the Reverend Edward Wright, Jr., Acting Dean of Students, Harvard Divinity School; the Reverend Armand Morissette, Rector of St. Jean the Baptist Church, Lowell; Rabbi David Feldman; Algernon D. Black, Senior Leader of the New York Society for Ethical Culture; and Professor Joseph Fletcher of the Episcopal Theological School, Cambridge. Each of these witnesses was prepared to testify, among other things, (a) in effect that the principles expressed in c. 272 § 19, concerning abortion were in substantial conflict with religious, moral, and sociological views entertained by them, their respective coreligionists, and others, and (b) that § 19 was a serious obstacle to advising persons turning to them for pastoral or professional advice.

Later that evening the young woman was examined by a physician at a suburban hospital. He found "several . . . fragments . . . lying free in the vagina" and reported that she was passing "small amounts of blood." He concluded, however, that an abortion had not taken place. She had further treatment at another hospital.

1. At the hearing on the motion to dismiss before the motion judge, Brunelle's counsel in effect conceded that Brunelle (although "the possessor of a medical doctor's degree") was not "a licensed practitioner." The assistant district attorney asserted that Brunelle was not a licensed physician in Massachusetts or any State. In any event, the motion to dismiss did not allege Brunelle to be a licensed physician, and the evidence at trial tended to show that he was not licensed.

In this prosecution under c. 272, § 19, Brunelle had the burden of coming forward with evidence that he, in some circumstances, might have (a) a defence or justification for acting in apparent violation of the broad prohibition in § 19 (as, for example, showing that he had a license to practice medicine in Massachusetts; see G. L. c. 278, § 7) and (b) the benefit of an exception from criminal liability under c. 272, § 19 (under prior judicial decisions such as *Kudish* v. *Board of Registration in Medicine*, 356 Mass. 98, 99–100). See *Commonwealth* v. *Freeman*, 354 Mass. 685, 688, fn. 3; [5] *Commonwealth* v. *Davis*, 359 Mass. 758; *Williams* v. *United States*, 138 F. 2d 81, 82–84 (D.C. Cir.), discussed in *United States* v. *Vuitch*, 402 U. S. 62, 68–69. Brunelle did not sustain that burden. Accordingly, we deal with the motion to dismiss on the basis that Brunelle has not shown himself to be a physician licensed to practice in Massachusetts.

2. Where one performing an abortion "is not a physician the mere proof of his act ordinarily would be sufficient to establish its unlawfulness." *Commonwealth* v.

---

[5] See discussion in Am. Law Inst., Model Penal Code (Tent. Draft No. 4, April 25, 1955), § 1.13 (2), pp. 7, 108–114; (Proposed Official Draft, May 4, 1962), §§ 1.12, 3.02. See also *Kadis* v. *United States*, 373 F. 2d 370, 372–374 (1st Cir.); *United States* v. *Rodrigues*, 433 F. 2d 760, 761–762 (1st Cir.).

*Brunelle,* 341 Mass. 675, 678.[6] An abortion (or attempted abortion) performed by one who is not a licensed physician is unlawful without regard to any principles affording a defence with respect to an abortion performed by a licensed physician. It constitutes a significant surgical or medical procedure, forbidden in any event to one not a licensed physician. G. L. (Ter. Ed.) c. 112, § 6.[7] A holder of a medical degree whose license has been revoked, as Brunelle's seems to have been (see the earlier *Brunelle* case, 341 Mass. 675), is subject to the provisions and prohibitions of c. 112, § 6, as fully as any other unlicensed person.

3. Brunelle is not in a position now to assert that a statute, valid in its application to an abortion not performed by a licensed physician, is unconstitutional merely because of contentions that (as applied to a licensed physician in like circumstances) it might or would be unconstitutional. "A statute may be unconstitutional as applied to some states of fact, but constitutional as applied to others." *Bowe* v. *Secretary of the Commonwealth,* 320 Mass. 230, 246. Only persons whose interests are affected by a statute may assert that it is unconstitutional. See *Kaplan* v. *Bowker,* 333 Mass. 455, 459; *Massachusetts Commn. Against Discrimination* v. *Colangelo,* 344 Mass. 387, 390–391; *Barnes* v. *Secretary of the Commonwealth,* 348 Mass. 671, 674; *Peterson, petitioner,* 354 Mass. 110, 114; *Kudish* v. *Board of Registration in Medicine,* 356 Mass. 98, 100. See also *Ashwander* v. *Tennessee Valley Authy.* 297 U. S. 288, 347 (Mr. Justice Brandeis concurring); *Alma Motor Co.* v. *Timken-Detroit Axle Co.* 329 U.S. 129, 136–137; *Rosen-*

---

[6] We need not discuss the very different considerations which apply to the acts of a licensed physician. See *Commonwealth* v. *Wheeler,* 315 Mass. 394, 395; *Kudish* v. *Board of Registration in Medicine,* 356 Mass. 98, 99–100.

[7] The requirement of registration is constitutionally valid. *Fogland* v. *Board of Registration in Medicine,* 357 Mass. 624, 628–629. A license once issued may be revoked. See *Lawrence* v. *Board of Registration in Medicine,* 239 Mass. 424, 427–430; *Kudish* v. *Board of Registration in Medicine,* 356 Mass. 98, 99–100.

*berg* v. *Fleuti,* 374 U. S. 449, 451.    Compare *Flast* v.
*Cohen,* 392 U. S. 83, 101–106 (taxpayers' effort to ques-
tion Federal expenditure).    Because c. 272, § 19, con-
stitutionally may be applied to Brunelle, we do not con-
sider contentions about its alleged general invalidity.[8]

4. In the circumstances, it was within the discretion of
the trial judge to refuse to put special questions to pros-
pective jurors in addition to those questions required by
G. L. c. 234, § 28.    *Commonwealth* v. *Ricard,* 355 Mass.
509, 510–511.    *Commonwealth* v. *Smith,* 357 Mass. 168,
176.

5. In the course of his charge, subject to Brunelle's ex-
ception, the trial judge stated that the "intent and pur-
pose" of G. L. c. 272, § 19, "is to prevent attempts to de-
stroy unprotected human beings in the womb of the
mother."    Brunelle contends that this statement, not only
was inaccurate, but also was prejudicial as bringing into
the case an "emotionally charged" issue about which
many sincere and conflicting views are entertained.    The
statute was first enacted over 125 years ago (St. 1845,
c. 27).    Although the legislative purpose does not appear
from the legislative documents in the State Archives, at
least one reason for its enactment may have been the
desire to protect women from the risks of what was then
a dangerous surgical procedure.[9]

---

[8] We also need not consider whether other persons, such as a licensed
physician or a pregnant woman seeking an abortion would have stand-
ing to seek declaratory or other relief concerning the constitutionality
of § 19.    See e.g. *Sturgis* v. *Attorney Gen.* 358 Mass. 37, 42; *Griswold*
v. *Connecticut,* 381 U. S. 479, 481.    See also two three-judge court
decisions, *Roe* v. *Wade,* 314 F. Supp. 1217 (N.D. Tex.) ; *Doe* v. *Bolton,*
319 F. Supp. 1048 (N.D. Ga.), argued on appeal before the Supreme
Court of the United States December 13, 1971, New York Times,
December 14, 1971, p. 21. [The opinion of the Supreme Court was re-
ported at 410 U. S. 179.— REPORTER.]    Other recent decisions dealing
with this general area include *Rosen* v. *Louisiana State Bd. of Medical
Examrs.,* 318 F. Supp. 1217 (E. D. La. three-judge court) ; *Steinberg*
v. *Brown,* 321 F. Supp. 741 (N.D. Ohio) ; *Corkey* v. *Edwards,* 322
F. Supp. 1248 (W.D. N.C. three-judge court).    See *Vuitch* v. *State,*
10 Md. App. 389.    See also *United States* v. *Vuitch,* 402 U. S. 62.

[9] The statute was passed at a time when the causes of infection (and
appropriate precautions to prevent it) were not well understood.    See
*Commonwealth* v. *Parker,* 9 Met. 263, 265; *Commonwealth* v. *Morri-
son,* 16 Gray, 224, 225.    Doubtless, other considerations have helped
to retain the statute substantially unchanged today, in a period when

A judge may inform a jury about the legislative purpose of a statute, if he does so accurately.  See *Commonwealth* v. *Sansone*, 252 Mass. 71, 75.  The purpose behind this statute, on its original enactment, is not certain and some reasons for continuing it have become increasingly controversial.  The trial judge would have been wiser to have avoided entirely the risk of prejudice from a wholly unnecessary remark.  "The test of the charge," however, "is the impression created by it as a whole."  See *Commonwealth* v. *Kelley*, 359 Mass. 77, 92.  See also *Commonwealth* v. *Pinnick*, 354 Mass. 13, 15.  So viewed, and in the context of otherwise proper instructions on relevant legal issues, the remark was harmless in the circumstances of this case.

6.  After deliberating for four and one-half hours, the jury asked the judge for further instructions on two issues.  The judge answered these questions and the jury conferred for about an hour more.  The jury then again appeared before the judge (we assume at his request).  He suggested that they were perhaps having difficulty agreeing upon a verdict and read them the charge in *Commonwealth* v. *Tuey*, 8 Cush. 1, 2–4.  The jury returned ten minutes later with a verdict of guilty.  The use of the *Tuey* case charge necessarily is a matter which rests largely in the sound discretion of the trial judge.  We perceive no special circumstances which made its use inappropriate in the present case.  *Commonwealth* v. *Rollins*, 354 Mass. 630, 636–638.

*Judgment affirmed.*

(as the evidence on the motion to dismiss showed) there has been great reduction of the risks of an abortion performed by a competent surgeon in a properly run hospital within the first three months of pregnancy.