COMMONWEALTH *vs.* IRVING JONES.

Suffolk.    March 8, 1977. — April 15, 1977.

Present: QUIRICO, BRAUCHER, WILKINS, LIACOS, & ABRAMS, JJ.

*Firearms.  Evidence,* Presumptions and burden of proof.  *Constitutional Law,* Presumptions and burden of proof.  *Practice, Criminal,* Charge to jury.

Discussion of G. L. c. 278, § 7, as it applies to prosecutions under G. L. c. 269, § 10 (*a*). [405-407]
The provisions of G. L. c. 278, § 7, placing on a defendant in a prosecution under G. L. c. 269, § 10 (*a*), the burden of showing that he was licensed to carry a firearm, satisfy due process requirements. [407-409]
At the trial of a defendant for carrying a firearm in violation of G. L. c. 269, § 10 (*a*), there was no error in an instruction to the jury to the effect that since the defendant had not produced evidence that he was licensed to carry a firearm, the jury must presume that the carrying was not authorized. [409-410]

COMPLAINT received and sworn to in the Municipal Court of the Roxbury District on May 17, 1975.

Upon appeal to the Superior Court the case was tried before *Mason, J.*

After review was sought in the Appeals Court, the Supreme Judicial Court, on its own initiative, ordered direct appellate review.

*Robert S. Potters* for the defendant.

*Joseph E. Coffey,* Assistant District Attorney (*Timothy M. Burke* with him) for the Commonwealth.

BRAUCHER, J.   Pursuant to G. L. c. 278, §§ 33A-33G, the defendant appeals from a conviction for carrying a firearm in violation of G. L. c. 269, § 10 (*a*). There was no evidence to show that the defendant did not have a license to carry a firearm, and the defendant argues that there was error in the denial of his motion for a directed verdict and in the instructions to the jury on the subject of licensing. We hold that G. L. c. 278, § 7,[1] establishing a presumption that the defendant, until he proves a license, is not so authorized, is constitutional. We further hold that the instructions, taken as a whole, fairly presented the case to the jury. We therefore affirm the conviction.

There was evidence that on May 17, 1975, the defendant had a loaded handgun in his hands while sitting in his car, but no evidence on the subject of a license. The judge denied the defendant's motion for a directed verdict, and charged the jury substantially in accordance with G. L. c. 278, § 7.[2] On conviction the defendant was sentenced to the mandatory minimum sentence of one year in a house of correction, and he appealed and was admitted to bail pending appeal. We brought the case here on our own motion.

The conviction could be affirmed on the authority of *Commonwealth* v. *Davis,* 359 Mass. 758 (1971), and cases cited. But the defendant contends that the decisions in *In re Winship,* 397 U.S. 358 (1970), and *Mullaney* v. *Wilbur,* 421 U.S. 684 (1975), require reexamination of the *Davis* case. Similar arguments have been successful in other courts. *Johnson* v. *Wright,* 509 F.2d 828, 830 (5th Cir.), cert. denied, 423 U.S. 1014 (1975). *State* v. *Beauton,* 170 Conn. 234, 240 (1976). *Head* v. *State,* 235 Ga. 677, 679

---

[1] "A defendant in a criminal prosecution, relying for his justification upon a license, appointment, admission to practice as an attorney at law, or authority, shall prove the same; and, until so proved, the presumption shall be that he is not so authorized."

[2] "Now in this case, you have no evidence whatsoever as to whether or not the Defendant had a license to carry the gun, and under the statute, you must presume that the carrying was not so authorized, under those facts."

(1975). *Commonwealth* v. *McNeil*, 461 Pa. 709, 715 (1975). We therefore undertake the suggested reexamination.

1. *Interpretation of our statute.* Our story begins with *Commonwealth* v. *Thurlow*, 24 Pick. 374, 381 (1837), where a conviction for selling liquor without a license was reversed because no evidence was produced that the defendant was not licensed. That case was followed in *Commonwealth* v. *Kimball*, 7 Met. 304, 306 (1843), but the proof there was held sufficient. A presumption that a defendant had not been licensed was established by St. 1844, c. 102, for prosecutions for selling spirituous or fermented liquors; by St. 1859, c. 160, such a presumption was extended to all criminal prosecutions. In *Commonwealth* v. *Boyer*, 7 Allen 306, 308 (1863), this court explained that in the *Thurlow* case, because of the way in which licenses were granted and recorded, "it was as easy for the Commonwealth to show the negative, as for the defendant to show the affirmative."

Subsequent cases have applied the statute and its successors both to cases involving intoxicants and to other offenses. *Commonwealth* v. *McCarty*, 141 Mass. 420, 422 (1886) (suffering a billiard table to be kept). *Commonwealth* v. *Brunelle*, 361 Mass. 6, 9 (1972) (license to practice medicine). *Commonwealth* v. *Lawrence Ready-Mix Concrete Corp.*, 4 Mass. App. Ct. 804 (1976) (permit to operate vehicle of certain weight). "As matter of statutory construction, the prohibition is general, the license is exceptional." *Commonwealth* v. *Nickerson*, 236 Mass. 281, 305 (1920). In *Commonwealth* v. *Davis*, 359 Mass. 758 (1971), involving conviction for carrying a gun in an automobile, we said, "General Laws c. 269, § 10, proscribes certain inherently dangerous acts, and G. L. c. 278, § 7, allows the defendant to show that his conduct is within an exception to the proscription."

General Laws c. 269, § 10 (*a*), was rewritten by St. 1975, c. 113, § 2, effective April 11, 1975. See *Commonwealth* v. *Jackson*, 369 Mass. 904, 907-908 (1976). The amendments do not affect the present question. The statute as rewritten provides for the punishment of a person who, "except

as provided by law, carries on his person . . . a firearm . . ." without having in effect a license issued under G. L. c. 140, § 131 or 131F, or complying with G. L. c. 140, §§ 129C and 131G, or with G. L. c. 269, § 12B. The cross references bring into play not only exceptions for holders of licenses but also the "exempted persons and uses" in G. L. c. 140, § 129C (*a*) through (*s*), some of which do not involve a license. See *Commonwealth* v. *Jackson, supra* at 908 n.3.

We sum up the established interpretation of G. L. c. 278, § 7, as it applies to prosecutions under G. L. c. 269, § 10 (*a*). The holding of a valid license brings the defendant within an exception to the general prohibition against carrying a firearm, and is an affirmative defense. Cf. Mass. Proposed R. Crim. P. for Dist. & Super. Cts. 11 (a) (1) (C), 11 (b) (1) (C), 14 (b) (3) (July 30, 1976). Absence of a license is not "an element of the crime," as that phrase is commonly used. In the absence of evidence with respect to a license, no issue is presented with respect to licensing. In other words, the burden is on the defendant to come forward with evidence of the defense. If such evidence is presented, however, the burden is on the prosecution to persuade the trier of facts beyond a reasonable doubt that the defense does not exist. Cf. *Commonwealth* v. *Kostka,* 370 Mass. 516, 532-534 (1976) (defense of insanity); *Commonwealth* v. *Rodriguez,* 370 Mass. 684, 687-689 (1976) (self-defense).

This interpretation, at least so far as it places on the defendant the burden of coming forward with evidence, is in accord with the great weight of authority. *Seattle* v. *Parker,* 2 Wash. App. 331, 337 (1970). See Annots., 153 A.L.R. 1218, 1258-1261 (1944), 69 A.L.R.3d 1054 (1976); Model Penal Code § 1.12 (2), (3) (Proposed Official Draft, 1962), and § 1.13, Comment (Tent. Draft No. 4, 1955). Cf. *Rossi* v. *United States,* 289 U.S. 89, 91-92 (1933) (registration of still). The principal contrary decision, other than the recent constitutional decisions cited above, is *Brown* v. *United States,* 66 A.2d 491, 494 (D.C. Mun. Ct. App. 1949), where the court said, "Here, in a relatively small geographical area, only one licensing authority ex-

ists, who issues only a small number of licenses each year."
Hence, "the circumstances in the District of Columbia do
not justify the rule followed in most states." Contrast *Williams* v. *United States*, 237 A.2d 539, 541 (D.C. Ct. App.
1968) (burden on defendant to bring himself within statutory exceptions).

As applied to the facts of the present case, the statute
treats absence of a license just as it treats, for example,
exemption under G. L. c. 140, § 129C (*s*), for possession by
a local historical society open to the public, provided the
firearm is unloaded, properly housed and secured from unauthorized handling. If there was no evidence with respect
to the defendant's connection with such a society, there
was no issue for the jury as to the application of the exemption. Similarly, if there was no evidence as to a license,
there was no issue for the jury as to licensing.

2. *Constitutionality*. We turn to the constitutional
question. *In re Winship*, 397 U.S. 358, 364 (1970), tells us
that "the Due Process Clause protects the accused against
conviction except upon proof beyond a reasonable doubt of
every fact necessary to constitute the crime with which
he is charged." But in *Mullaney* v. *Wilbur*, 421 U.S. 684,
701 n.28 (1975), where absence of passion in a murder
case was held to be a fact subject to that rule, the Court
said, "Many States do require the defendant to show that
there is 'some evidence' indicating that he acted in the
heat of passion before requiring the prosecution to negate
this element by proving the absence of passion beyond a
reasonable doubt. [Citations omitted.] Nothing in this
opinion is intended to affect that requirement" (citations
omitted). Further, with respect to presumptions and inferences, the Court said at 702 n.31: "These procedural
devices require (in the case of a presumption) or permit
(in the case of an inference) the trier of fact to conclude
that the prosecution has met its burden of proof with respect to the presumed or inferred fact by having satisfactorily established other facts. Thus, in effect they require
the defendant to present some evidence contesting the
otherwise presumed or inferred fact. Since they shift the

production burden to the defendant, these devices must satisfy certain due process requirements." (Citations omitted.)

A classic statement of the "limits of reason and fairness" in casting the production burden on the defendant in a criminal case is found in *Morrison* v. *California*, 291 U.S. 82, 88-89 (1934): "The limits are in substance these, that the state shall have proved enough to make it just for the defendant to be required to repel what has been proved with excuse or explanation, or at least that upon a balancing of convenience or of the opportunities for knowledge the shifting of the burden will be found to be an aid to the accuser without subjecting the accused to hardship or oppression." Such a shift may be proper if there is a "manifest disparity in convenience of proof and opportunity for knowledge as, for instance, where a general prohibition is applicable to every one who is unable to bring himself within the range of an exception." *Id.* at 91. That standard has been applied to uphold the casting of the production burden on the defendant in circumstances much like those of the present case. *Rossi* v. *United States*, 289 U.S. 89, 91-92 (1933) (registration of still). *United States* v. *Chodor*, 479 F.2d 661, 663 (1st Cir.), cert. denied, 414 U.S. 912 (1973) (authority to possess simulated currency). *People* v. *Henderson*, 391 Mich. 612, 615-616 (1974) (license to carry gun).

Under G. L. c. 140, § 131, as amended through St. 1974, c. 649, § 1, effective April 1, 1975, under St. 1975, c. 4, § 1, the chief of police of any city or town may issue a license to carry firearms to an applicant residing or having a place of business there, for a period of four to five years. Although the issuing authority is to notify the Commissioner of Public Safety, and the license holder is to notify the State and local authorities of any change in his address, it seems clear that a requirement that the prosecutor prove that no such license was issued would impose an extravagant burden. Proof of a license by the defendant, on the other hand, would be a very simple task and would not require his testimony. Cf. *Barnes* v. *United States*, 412

U.S. 837, 846-847 (1973) (no violation of privilege against self-incrimination where a defendant's testimony is not required to rebut inference); *Commonwealth* v. *Pauley,* 368 Mass. 286, 297-298, appeal dismissed for want of substantial Federal question, 423 U.S. 887 (1975); *State* v. *Blanca,* 100 N.J. Super. 241, 248 (1968).

Under G. L. c. 140, § 129C, a person licensed to carry a firearm shall on demand of a police officer exhibit his license, or his firearm identification card or receipt, or a valid hunting license. On failure he may be required to surrender the firearm, but the failure is not made criminal. It could be. Cf. G. L. c. 269, § 10 (*h*) (requirements as to firearm identification card); *Commonwealth* v. *Brady,* 370 Mass. 630, 632-633 (1976) (requirement to carry bill of sale for new car); *People* v. *Brownlee,* 17 Ill. App. 3d 535, 540 (1974) (firearm identification card). A requirement that he exhibit his license in court is less stringent, and avoids the possibility of conviction for the minor mistake of leaving the license at home. See *Commonwealth* v. *Pauley, supra* at 299 n.17.

In sum, we think G. L. c. 278, § 7, as applied to a license to carry a firearm, satisfies due process requirements. The defendant did not make any suggestion that he had a license. We find it nearly impossible to believe that he had such a license but withheld it, subjecting himself to the risk of a mandatory term of imprisonment. If he did so, for example, for the purpose of establishing a legal principle, the words of the Supreme Court in *Williams* v. *Florida,* 399 U.S. 78, 82 (1970), are apposite: "The adversary system of trial is hardly an end in itself . . . ." Such an absurd game does not contribute to a search for truth; instead, it increases the risk of convicting the innocent and acquitting the guilty. We find no unfairness in our traditional rule. Notwithstanding the decision in *Mullaney* v. *Wilbur, supra,* "we cannot with assurance predict with 'near certainty' the impending doom" of the principles of *Morrison* v. *California, supra.* See *Buzynski* v. *Oliver,* 538 F.2d 6, 10 (1976).

3. *The charge to the jury.* The judge charged the jury

(see note 2, *supra*) substantially in the terms of G. L. c. 278, § 7, and the defendant contends that the result was an impermissible shift to the defendant of the burden of proof on an element of the crime and an invasion of the fact finding function of the jury. A verdict may not be directed against a defendant in a criminal prosecution, and the trier of fact cannot be compelled to find against the defendant as to any "element of the crime." See *Commonwealth* v. *Pauley, supra* at 291. But the charge in the present case did not direct a verdict against the defendant, and the absence of a license, as we have pointed out, was not an "element of the crime," in the sense of the *Pauley* case. In the language of *Mullaney* v. *Wilbur*, quoted above, G. L. c. 278, § 7, establishes a "presumption" rather than an "inference."[3] In the absence of any evidence on the issue of licensing, it was appropriate to withdraw that issue from consideration by the jury. We do not encourage the use of the words "presume" and "presumption" in jury instructions. See *Commonwealth* v. *Kostka*, 370 Mass. 516, 525 n.5 (1976). It might have been better simply to state that in the absence of evidence the jury should not consider the question whether the defendant had a license to carry a gun. Cf. *People* v. *Henderson*, 391 Mich. 612, 615 (1974). But no harm was done of which the defendant can complain. Taken as a whole, the instructions fairly presented the case to the jury.

*Judgment affirmed.*

---

[3] If such a "presumption" were authoritatively held to be unconstitutional, we would hold that the unexplained possession of a firearm permits an "inference" that the possessor has no license. But see Ashford & Risinger, Presumptions, Assumptions, and Due Process in Criminal Cases: A Theoretical Overview, 79 Yale L.J. 165, 201 (1969).