TORRUELLA, Circuit Judge,
Dissenting.
In my view, Powell is entitled to habeas based on his due process claim.
The SJC’s adjudication of that claim consisted of a reference to Commonwealth v. Jones, 372 Mass. 403, 361 N.E.2d 1308 (1977) to support the proposition that, because absence of a license[13] is not “an *350 element of the crime,” id. at 1311, the burden-shifting device created by Massachusetts General Laws chapter 278, section 7 accords with due process. Commonwealth v. Powell, 459 Mass. 572, 946 N.E.2d 114, 124 (2011), cert. denied, — U.S. -, 132 S.Ct. 1739, 182 L.Ed.2d 534 (2012). The task of assessing whether this part of the SJC’s decision was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court, see 28 U.S.C. § 2254(d)(1), is complicated by the fact that the precise role of licensure under the Massachusetts scheme is unsettled, notwithstanding Jones’s statement. If licensure is an affirmative defense under the Massachusetts scheme, that scheme must accord with the Supreme Court’s doctrine on affirmative defenses. On the other hand, if licensure is an element of the offense that is subject to proof by presumption under the Massachusetts scheme, that scheme must accord with the Supreme Court’s doctrine on presumptions. In my opinion, Jones and subsequent SJC cases, including Powell’s, have not spoken clearly on this point, as the district court in this case recognized. See Powell v. Tompkins, 926 F.Supp.2d 367, 374-75 (D.Mass.2013). My first task, therefore, is to determine the role of licensure under the Massachusetts scheme.
I. Role of Licensure Under Massachusetts Scheme
I agree with the district court that the text both of Powell’s criminal complaint and of the statutes under which he was charged indicates that lack of a license is an element of the offense. The titles of the relevant counts are “Firearm Without FID Card, Possess” and “Firearm, Carry Without License.” (emphasis added). Likewise, the descriptions of the counts against Powell repeat the “without a license” phrase. Furthermore, one of the relevant statutes provides: “Whoever ... possesses ... a firearm ... without complying with the [FID card] provisions ... shall be punished by imprisonment....” Mass. Gen. Laws ch. 269, § 10(h)(1) (emphasis added). The other relevant statute provides: “Whoever ... has in his possession ... a firearm ... without ... having in effect a license ... shall be punished by imprisonment----” Id. § 10(a) (emphasis added).
Reading the text of these counts and statutes to say that lack of a license is an element of the offense might appear inconsistent with the text of Massachusetts General Laws chapter 278, section 7, but it is not. That section provides: “A defendant in a criminal prosecution, relying for his justification upon a license ..., shall prove the same; and, until so proved, the presumption shall be that he is not so authorized.” Id. ch. 278, § 7. By its own terms, the requirement that a defendant prove a license applies only to “[a] defendant ... relying for his justification upon a license.” Id. (emphasis added). To rely on a license for a “justification,” as that term is generally understood in criminal law, means to rely on a license for a defense. See Model Penal Code § 3.01(1) (“[JJustification is an affirmative defense.”); Black’s Law Dictionary 977 (10th ed.2014) (defining “justification” as “[a] showing, in court, of a sufficient reason why a defendant acted in a way that, in the absence of the reason, would constitute the offense with which the defendant is charged”). To say that a defendant must prove licensure in those instances when he relies on a license for his defense implies that there may be other instances in which licensure is not viewed as a defense, and in *351 those instances the defendant may not need to prove it. Otherwise, there would have been no need for the legislature to include the limiting language. See Ropes & Gray LLP v. Jalberb, 454 Mass. 407, 910 N.E.2d 330, 336 (2009) (recognizing that under Massachusetts law statutes are construed to avoid surplusage). Thus, the text of section 7, standing alone, is not probative of whether licensure is an element or a defense in the particular context of gun possession crimes.
Moreover, other cases, distinguishable from Powell’s, exemplify how licensure might be raised as a defense, triggering application of section 7. Before introducing these cases, it should be noted that section 7 is a section of general applicability, appearing in the chapter governing trial procedure and proceedings before judgement. See Mass. Gen. Laws ch. 278. The section’s full title is, “Burden To Prove License or' Admission To Practice as Attorney at Law,” and, in its entirety, it provides, “A defendant in a criminal prosecution, relying for his justification upon a license, appointment, admission to practice as an attorney at law, or authority, shall prove the same; and, until so proved, the presumption shall be that he is not so authorized.” Id. §' 7.
In Commonwealth v. O’Connell, the defendant was convicted of forgery. See 438 Mass. 658, 783 N.E.2d 417, 422 (2003). The Massachusetts statute criminalizing forgery provides: “Whoever, with intent to injure or defraud, falsely ... forges ... [certain types of documents] shall be punished by imprisonment....” Mass. Gen. Laws ch. 267, § 1. According to the SJC: “The elements of the crime of forgery are (1) falsely making all or part of a document or instrument; (2) with the intent to defraud.” O’Connell, 783 N.E.2d at 424 n. 9 (citation omitted). Despite the fact that the criminal prohibition does not mention “authority” (which, under section 7, is the • equivalent of licensure), the defendant in O’Connell tried to argue that lack of authority to create the relevant documents was an element of the crime, requiring proof by the prosecution. The SJC disagreed. See id. at 423-24. Citing section 7, the SJC said that “authority may be raised as a defense, and, if so raised, the Commonwealth then bears the burden of proving beyond a reasonable doubt the absence of authority.” Id. at 424.
Similarly, in Commonwealth v. Brunette, the defendant was convicted of performing an illegal abortion. See 361 Mass. 6, 277 N.E.2d 826, 828 (1972). The relevant statute provides, “[w]hoever, with intent to procure the miscarriage of a woman, unlawfully administers to her, or advises or prescribes for her, or causes any poison, drug, medicine or other noxious thing to be taken by her ... shall ... be punished by imprisonment....” Mass. Gen. Laws ch. 272, § 19. Notably, the statute does not say that performing any of these actions “without a license” or “without authority” constitutes the crime. As the SJC explained, citing section 7, “[i]n [a] prosecution under c. 272, s 19, [the defendant] had the burden of coming forward with evidence that he, in some circumstances, might have ... a defence or justification for acting in apparent violation of the broad prohibition in s 19 (as, for example, showing that he had a license to practice medicine in Massachusetts).... ” Brunette, 277 N.E.2d at 829.
Unlike the statutes under which Powell was convicted, the statutes at issue in O’Connell and Brunette did not include the “without a license” language. It was thus clear in those cases, unlike in Powell’s, that, were the defendant to invoke licensure, he would need to do so as a defense, triggering application of section 7.
*352 In short, if determining the elements of the gun possession offense depended only on reading the criminal complaint and statutes, I would hold that lack of a license is an element of the crime. But I do not write on a clean slate: The SJC in Jones said that lack of a license is not an element of the offense. 361 N.E.2d at 1311. The district court here noted this Massachusetts state court interpretation, but afforded it no deference on the ground that it “def[ied] the plain reading of both the relevant firearms statutes and Powell’s criminal complaint.” Powell, 926 F.Supp.2d at 375. I conclude that the SJC’s statement in Jones does not preclude the determination that lack of a license is an element of the offense, but I do not adopt the district court’s reasoning. A federal court on habeas review cannot ignore a high court’s interpretation of its state’s statutes simply because, in the federal court’s opinion, that interpretation defies the statutes’ plain meaning. I agree that Jones’s interpretation defies the statutes’ plain meaning, but that is not why I refuse to follow Jones’s statement. Instead, I feel free to depart from Jones because, as I detail below, since Jones was decided, the SJC has not spoken uniformly on whether the lack of a license is an element of the offense.
After Jones was decided, in Commonwealth v. Toole, 389 Mass. 159, 448 N.E.2d 1264 (1983), the SJC was presented with the following facts: After pulling over the defendant’s truck, as part of a routine frisk, a police officer found an empty holster and an ammunition clip on the defendant’s person. Id. at 1265-66. This prompted the police to search the truck, revealing a firearm behind the seat. Id. at 1266. After the search, the defendant was • asked if he had an FID Card, which he did not. Id. The SJC held that, since there was no showing that the police had any reason to believe that the defendant’s possible possession of a gun was a crime — not having asked the defendant before the search whether he had an FID card — no probable cause or exigent circumstances existed to justify the warrantless search. Id. at 1268. Said the SJC:
The empty holster and ammunition found on the defendant certainly created probable cause to believe that there was a gun in the cab. But carrying a .45 caliber revolver is not necessarily a crime. A possible crime was carrying a gun without a license to carry'firearms ... However, the police did not learn that the defendant had no firearm identification card until after the search.
Id. (citation omitted).
. Because Jones established that lack of a license could be presumed to be an element of the offense, whereas Toole implied that it could not, in Commonwealth v. Couture, the Commonwealth argued that the two cases led to “an ‘irrational’ result, namely, that a police officer in the street must show more in determining that a gun is unlawfully carried than a prosecutor needs to prove to obtain a conviction.” 407 Mass. 178, 552 N.E.2d 538, 540 (1990). The SJC attempted to reconcile the eases as in the following.manner:
Jones dealt with the allocation of burdens in the context of a criminal trial. The particular burden to which ... Jones pertains is not the burden of proof, but merely the burden of coming forward with evidence sufficient to raise an issue of fact ... Where the defendant at trial has had every opportunity to respond to the Commonwealth’s charge that the defendant was unlawfully carrying a handgun, where the defendant need only produce that slip of paper indicating that he was licensed to carry that gun, and where instead the defendant produces no evidence to that effect, *353 the jury are entitled to presume that the defendant indeed did not have a license to carry the gun, and the Commonwealth need present no additional evidence to prove that point. This scenario is a far cry from a defendant who, having merely been seen in public with a handgun, and without any opportunity to respond as to whether he has a license, is forced out of his vehicle at gunpoint and subjected to an invasive search.... The mere possession of a handgun was not sufficient to give rise to a reasonable suspicion that the defendant was illegally carrying that gun, and the stop was therefore improper under Fourth Amendment principles.
Id. at 540-41 (citation omitted).
After Coutre, in Commonwealth v. Alvarado, the SJC reiterated:
Carrying a gun is not a crime. Carrying a firearm without a license (or other authorization) is.... Carrying a weapon concealed in a towel, a bag, or a knapsack, for example, ... is not a crime in this State. The suspected crime in such circumstances can only be the carrying of an unlicensed weapon, because carrying a concealed weapon is not, standing alone, an indication that criminal conduct has occurred or is contemplated.
423 Mass. 266, 667 N.E.2d 856, 859 (1996).
Then, in Commonwealth v. Gouse, 461 Mass. 787, 965 N.E.2d 774 (2012), the SJC attempted to downplay the significance of decisions like Couture and Alvarado, which seemed to. have called into question Jones’s statement that lack of a license is not an element' of the offense. There, the SJC concluded that the elements of the offense are simply (1) possession of (2) a firearm, and said that statements to the contrary made in other contexts “do[ ] not diminish this conclusion with regard to the essential elements of the crime.” Id. at 787 n. 17. Referring to Couture and Alvarado, the SJC in Gouse said:
In those cases, we concluded that the mere presence of a firearm without more did not furnish probable cause or reasonable suspicion sufficient to justify the seizure of an individual by a police officer in the field; we were not asked to examine the requirements of § 10(a) in the context of the proof necessary at a trial. There is, therefore, no meaningful conflict between the manner in which those cases, and the ones [that include the crime as consisting of only two elements], describe the crime of unlawful possession of a firearm.... Our respect for an individual’s rights under the Fourth Amendment ... against unreasonable searches and seizures on the street has no bearing on the allocation of burdens at trial.
Id. (citations omitted).
I recognize that it is the province of the states to define crimes and defenses and to allocate burdens. But from what I can tell, Massachusetts simply has not provided a clear definition of the offense-of illegal firearm possession. I understand that protecting individuals’ rights against unreasonable searches and allocating burdens at trial are distinct’ enterprises, but I do not see how this distinction permits a state court, consistent with due process, to interpret a criminal statute to have three elements in one context but to have only two elements in another. See Johnson v. Gomez, No. C 96-2913 CAL, 1997 WL 703770, at *7 (N.D.Cal. Oct. 28, 1997) (not reported), aff'd, 166 F.3d 343 (9th Cir.1998) (“A state court’s determination that a statutory provision does not characterize an element of the offense must nonetheless comport with due process.”) (citing McMillan v. Pennsylvania, 477 U.S. 79, 85-86, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986)).
*354 Here, this court is confronted with what, to my knowledge, is a novel scenario: The state legislature made lack of a license an element of the offense, whereas the state judiciary has spoken ambiguously on the matter. It should be noted that when the Supreme Court has discussed states’ authority to define crimes and to allocate burdens in the past, the discussion has often focused on the state’s legislative, not judicial, branch. For instance, in McMillan v. Pennsylvania, the Supreme Court said, “in determining what facts must be proved beyond a reasonable doubt the state legislature’s definition of the elements of the offense is usually dispositive: ‘[T]he Due Process Clause requires the prosecution to prove beyond a reasonable doubt all of the elements included in the definition of the offense of which the defendant is charged.’ ” McMillan, 477 U.S. at 85, 106 S.Ct. 2411 (emphasis added by McMillan) (quoting Patterson v. New York, 432 U.S. 197, 210, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977)).
I find it notable that in other states, the legislature’s and the judiciary’s visions on this subject accord. Indeed, in Gouse the SJC said that licensure as an affirmative defense to firearm charges “has been fully recognized in other jurisdictions.” 965 N.E.2d at 788. In support of this proposition, the SJC cited cases from both Florida and Indiana. Id. An analysis of these cases proves revealing.
From Florida, the SJC cited Watt v. State, 31 So.3d 238 (Fla.Dist.Ct.App.2010), which itself quoted State v. Robarge, 450 So.2d 855 (Fla.1984). When Robarge arose in 1984, the relevant Florida statute provided, “Whoever shall carry ... any pistol ... without having a license ... shall be guilty of a misdemeanor....” Fla. Stat. § 790.05 (repealed 1987). In Robarge, the State argued that licensure should be considered an affirmative defense. 450 So.2d at 856. The Supreme Court of Florida first set out the general rule for determining whether a statutory exception is an element of an offense or a defense: “[I]f there is an exception in the enacting clause, the party pleading must show that his adversary is not within the exception; but, if there be an exception in a subsequent clause, or a subsequent statute, that is [a] matter of defence [sic], and is to be shown by the other party.” Id. (quoting Baeumel v. State, 26 Fla. 71, 7 So. 371, 372 (1890)). Because, in the Florida statute, the phrase “without having a license” “exception” appeared in the “enacting clause,” the Robarge court held that the absence of a license was an element of the crime. Id.
Subsequent to Robarge, the Florida legislature amended the statutory scheme. Today, one statutory section provides, “a person who carries a concealed weapon ... commits a misdemeanor.” Fla. Stat. § 790.01(1). In other words, the current statute outrightly bans carrying, without any mention of licensure. Another statutory subsection provides, “section [790.01] does not apply to a person licensed to carry a concealed weapon ... pursuant to the provisions of s. 790.06.” Id. § 790.01(3). In turn, independent section 790.06(1) provides, “[a]ny person in compliance with the terms of [a] license [to carry] may carry a concealed weapon or concealed firearm notwithstanding the provisions of s. 790.01.” Id. § 790.06(1) (emphasis added). These independent provisions provide the affirmative defense to the outright ban.
Watt v. State, the Florida case cited by the SJC in Gouse, arose under this new statutory scheme. 31 So.3d 238 (Fla.Dist.Ct.App.2010). There, the court said:
Under the terms of the concealed weapon/firearm statute, the state does not have the burden of proving the absence *355 of a license as an element of the crime. Rather, proof of a license is pertinent only as an affirmative defense. Generally, for a statutory exception, such as a license, to constitute a defense under Florida law, the exception “must be in a clause subsequent to the enacting clause of a statute.”. ... The license defense is in the subsequent clause.... As such, it is an affirmative defense, not an element of the crime.
Id. at 242- (footnote omitted) (citations omitted) (quoting Robarge, 450 So.2d at 856). As the current Massachusetts scheme is akin to the old Florida scheme— lack of a license is mentioned in the very section that creates the criminal offense— the SJC’s reliance in Gouse on Florida cases was misplaced.
As for Indiana cases, the SJC in Gouse, 965 N.E.2d at 788, cited Taylor v. State, 578 N.E.2d 664 (Ind.1991), which itself cited Washington v. State, 517 N.E.2d 77 (Ind.1987). The Indiana statute at issue in both Taylor and Washington provides, “[A] person shall not carry a handgun ... without being licensed.” Ind.Code § 35-47-2-1(a). An independent section provides, “[I]t is not necessary ... to allege the absence of a license.... The burden of proof is on the defendant to prove ... that he has a license....” Id. § 35-47-2-24(a).
In Washington, the Supreme Court of Indiana held that lack of a license was not an element of the crime, and that possession of a license was a defense on which the defendant bore the burden of proof. 517 N.E.2d at 79. Four years later, in Taylor, the Supreme Court óf Indiana, in a three-two opinion, reiterated that possession of a license was a matter for the defendant to establish as an affirmative defense. 578 N.E.2d at 666 (citing id.). The dissent cited the following principle of Indiana law: “When an offense is created by statute and another statute or another section of the same statute makes exceptions thereto, it is not necessary for the prosecution in the indictment or affidavit to negate the exception by stating that the defendant does not come within the same.” Id. at 667 (DeBruler, J., concurring in part and dissenting in part) (quoting Day v. State, 251 Ind. 399, 241 N.E.2d 357, 359 (1968)). Because, in the Indiana statute, the “without being licensed” language is found in the enacting clause, the dissent argued that the prosecution should bear the burden of establishing that the defendant lacked a license. Id. It consequently called for Washington v. State to be overruled. Id.
Several things about the Indiana scheme are notable. First, the independent proviso in the Indiana code is clearer than section 7 of chapter 278 in its intent to cast licensure as an affirmative defense. It pertains only to gun possession prosecutions, appears in the same chapter as the substantive prohibition, and explicitly relieves the prosecution of alleging lack of a license. Unlike section 7, which, as discussed above, applies only when licensure is raised as a defense, the Indiana proviso explicitly makes licensure a defense. In addition, a majority of the Indiana Supreme Court, unlike the SJC, has spoken consistently with respect to the non-element status of licensure. Moreover, despite this clarity and consistency, the proposition that licensure is an affirmative defense garnered only a bare majority of the Indiana Supreme Court in Taylor, and, so far as I can tell, no federal court has been asked on habeas review to assess whether Indiana’s scheme comports with due process.
Given the clear text of Powell’s criminal complaint and the Massachusetts statutes, the unclear gloss on those statutes supplied by the SJC, and the comparison to other jurisdictions (invited by the SJC in Gouse), I conclude that in Massachusetts, *356 a lack of a license is an element of the offense of possessing a gun without a license.
Having reached this conclusion, I must decide whether the SJC’s treatment of that element in Powell’s case was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court. Powell would read the SJC’s opinion simply to say that he bore, the burden of proof on the licensure element. On that reading, the opinion would clearly be contrary to federal law. After all, it has been clear since In re Winship that a state may not place on the defendant the burden of disproving an element of an offense. 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970).
Nevertheless, the district court, in Powell, had a more charitable view of the SJC’s defense of the Massachusetts scheme See 926 F.Supp.2d at 376. Looking past Jones’s erroneous statement that licensure is not an element but an affirmative defense, the district court held Jones and section 7 to permit the lack of a license element to be presumed. Id. Indeed, section 7 provides that “the presumption shall be that [a defendant] is not [licensed].” Mass. Gen. Laws ch. 278, § 7. The defendant can rebut this presumption by adducing evidence of a license, so the presumption, in effect, shifts only the burden of production of licensure onto the defendant, leaving the burden of persuasion with the prosecution. I now analyze de novo whether the SJC’s disposition of Powell’s due process claim comports with the clearly established federal law of presumptions.
II. Analysis of SJC’s Opinion Under Federal Presumption Law

A. SJC’s Discussion of Federal Presumption Law

In rejecting Powell’s due process claim, the SJC did not cite any Supreme Court cases. See 946 N.E.2d at 124. Instead, it cited its previous discussion in Jones. Id. In Jones, and, by reference, in Powell, the SJC, in upholding the constitutionality of the Massachusetts scheme, relied on the Supreme Court cases, Mullaney v. Wilbur, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975), and Morrison v. California, 291 U.S. 82, 54 S.Ct. 281, 78 L.Ed. 664 (1934). See 361 N.E.2d at 1311-12.
Mullaney held that it violates due process for a state to require a defendant charged with murder to prove, in an attempt to reduce the charge to manslaughter, that he acted in the heat of passion on sudden provocation. 421 U.S. at 703-04, 95 S.Ct. 1881. This holding comports with Winship. See 397 U.S. at 364, 90 S.Ct. 1068. In Jones, the SJC relied on two footnotes from Mullaney. See 361 N.E.2d at 1311-12. In one, the Supreme Court recognized, “[m]any States do require the defendant to show that there is ‘some evidence’ indicating that he acted in the heat of passion before requiring the prosecution to negate this element by proving the absence of passion beyond a reasonable doubt. Nothing in this opinion is intended to affect that requirement.” 421 U.S. at 702 n. 28, 95 S.Ct. 1881 (citations and internal quotation marks omitted).
In the other footnote, the Court said:
Generally in a criminal case the prosecution bears both the production burden and the persuasion burden. In some instances, however, it is aided by a presumption or a permissible inference. These procedural devices require (in the case of a presumption) or permit (in the case of an inference) the trier of fact to conclude that the prosecution has met its burden of proof with réspect to the presumed or inferred fact by having satisfactorily established other facts. *357 Thus, in effect they require the defendant to present some evidence contesting the otherwise presumed or inferred fact. Since they shift the production burden to the defendant, these devices must satisfy certain due process requirements.
Id. at 702 n. 31, 95 S.Ct. 1881 (citations omitted). 'In other words, while Mullaney prohibited a state from shifting onto the defendant the ultimate burden of proof of an element, the SJC invoked those parts of Mullaney where the Court explained that its ruling would still permit a state to shift to the defendant the burden of initial production, so long as the burden of persuasion rested with the prosecution.
Of course, as reflected in the second Mullaney passage quoted above, the Court noted that there are due process constraints on the state’s ability to shift the burden of production through use of presumption. In articulating those constraints, the SJC in Jones curiously looked not to the cases cited by Mullaney, but instead to Morrison v. California, which the SJC alleged provided “[a] classic statement” of the due process limits on shifting the burden of production. Jones, 361 N.E.2d at 1312. Jones quoted the following passage form Morrison:
The limits are in substance these, that the state shall have proved enough to make it just for the defendant to be required to repel what has been rpoved [sic] with excuse or explanation, or at least that upon a balancing of convenience or of the opportunities for knowl.edge the shifting of the burden will be found to be an aid to the accuser without subjecting the accused to hardship or oppression.
Id. (correct in original) (quoting Morrison, 291 U.S. at 88-89, 54 S.Ct. 281). The SJC continued on to quote Morrison: “Such a shift [in the burden of production] may be proper if there is a ‘manifest disparity in convenience of proof and opportunity for knowledge, as, for instance, where a general prohibition is applicable to every one who is unable to bring himself within the range of an exception.’ ” Id. (quoting 291 U.S. at 91, 54 S.Ct. 281).
However, Jones’s invocation of Morrison as the constitutional test for shifting the burden of production through presumption is problematic. The first Morrison passage quoted by the SJC pertains to the limits on shifting not the burden of production, but rather the ultimate burden of proof. See 291 U.S. at 88-89, 54 S.Ct. 281. And the second passage quoted by the SJC is incomplete. The excerpt in the SJC’s opinion focuses on disparity in convenience of proof and opportunity for knowledge as justifying a shift of the production burden. In fact, Morrison said, “For a transfer of the burden, experience must teach that the evidence held to be inculpatory has at least a sinister significance, or, if this at times be lacking, there must be in any event a manifest disparity in convenience of proof and opportunity for knowledge....” Id. at 90-91, 54 S.Ct. 281 (citations omitted). Jones’s selective quotation overlooks the requirement that “the evidence held to be inculpatory ha[ve] at least a sinister significance.” This requirement was important to the holding in Morrison. There, the defendants were convicted under a statute making it a crime to possess land if one was both a noncitizen and ineligible for citizenship. Id. at 83, 54 S.Ct. 281. The Court held unconstitutional a scheme under which the state needed to prove only possession of land, leaving proof of either citizenship or eligibility for citizenship to the defendant. Id. at 97-98, 54 S.Ct. 281. The Court explained:
Possession of agricultural land by one not shown to be ineligible for citizenship *358 is an act that carries with it not even a hint of criminality. To prove such possession without more is to take hardly a step forward in support of an indictment. No such probability of wrongdoing grows out of the naked fact of use or occupation as to awaken a belief that the user or occupier is guilty if he fails to come forward with excuse or explanation. The legislature may go a good way in raising (a presumption) or in changing the burden of proof, but there are limits. What is proved must be so related to what is inferred in the case of a true presumption as to be at least a warning signal according to the teachings of experience.
Id. at 90, 54 S.Ct. 281 (citations and internal quotation marks omitted). In other words, to support its holding, the Court focused less on the disparity in convenience of proof, and more on the facts that possession of land — the evidence held to be inculpatory — (1) lacked a sinister significance, and (2) was not related to the possessor’s citizenship status.
B. Federal Presumption Law
Had the SJC in Jones looked not to Morrison, but to the cases cited by Mullaney itself in support of the proposition that there are due process constraints on the state’s ability to shift even the burden of production, the SJC would have had the guidance of Barnes v. United States, 412 U.S. 837, 93 S.Ct. 2357, 37 L.Ed.2d 380 (1973) and Turner v. United States, 396 U.S. 398, 90 S.Ct. 642, 24 L.Ed.2d 610 (1970). See Mullaney, 421 U.S. at 702 n. 31, 95 S.Ct. 1881.
The Barnes Court commenced with “a review of ... decisions[, including Turner;] which have considered the validity under the Due Process Clause of criminal law presumptions,” 412 U.S. at 841, 93 S.Ct. 2357, and concluded that “[t]he teaching of the [reviewed] cases is not altogether clear,” id. at 843, 93 S.Ct. 2357. Some cases, like United States v. Gainey, 380 U.S. 63, 85 S.Ct. 754, 13 L.Ed.2d 658 (1965), applied the test first announced in Tot v. United States, 319 U.S. 463, 467, 63 S.Ct. 1241, 87 L.Ed. 1519 (1943) that there must be a “rational connection between the fact proved and the ultimate fact presumed.”
I pause here to review the test established by Tot. There, the government urged the Court to hold that two alternative tests governed the validity of presumptions. “The first is that there be a rational connection between the facts proved and the fact presumed; the second that of comparative convenience of producing evidence of the ultimate fact.” Tot, 319 U.S. at 467, 63 S.Ct. 1241. But, according to Tot:
We are of opinion that these are not independent tests but that the first is controlling and the second but a corollary. Under our decisions, a statutory presumption cannot be sustained if there be no rational connection between the fact proved and the ultimate fact presumed, if the inference of the one from proof of the other is arbitrary because of lack of connection between the two in common experience.
Id. at 467-68, 63 S.Ct. 1241. Of the many cases cited in support of this statement, the most recent was Morrison v. California. See id. at 468 n. 9, 63 S.Ct. 1241. To reiterate, the SJC in Jones focused exclusively on what Morrison had said regarding comparative convenience of producing evidence, and ignored what Morrison had said regarding the need for a connection between the innocuous fact proved and the culpable fact presumed. In light of Tot’s statement that the “comparative convenience” test is “but a corollary” of the “controlling” “rational connection” test — a *359 statement that, as noted above, reflects the very reasoning of Morrison itself — -the SJC’s sole focus on comparative convenience was misguided.
Another case reviewed by Barnes, Leary v. United States, purported to expound on Tot’s “rational connection” test by saying that a “presumption must be regarded as ‘irrational’ or ‘arbitrary,’ and hence unconstitutional, unless it can at least be said with substantial assurance that the presumed fact is more likely than not to flow from the proved fact on which it is made to depend.” 395 U.S. 6, 36, 89 S.Ct. 1532, 23 L.Ed.2d 57 (1969) (emphasis added). In a footnote, the Leary Court said that, since the inference at issue failed to satisfy this “more likely than not” gloss on Tot’s “rational connection” test, the Court did not need to reach the question whether a presumption being used to prove an element of a crime must satisfy not only the “more likely than not” gloss, but also the “reasonable doubt” standard. Id. at 36 n. 64, 89 S.Ct. 1532. Both the final case reviewed by Barnes, Turner v. United States, and the Barnes case itself noted that Leary reserved the question whether the “more likely than not” or “reasonable doubt” standard- controlled in criminal cases, but they too left this question open by concluding that the presumptions under review satisfied even the more stringent “reasonable doubt” standard. See Barnes, 412 U.S. at 845, 93 S.Ct. 2357; Turner, 396 U.S. at 416, 90 S.Ct. 642.
This much is clear from the survey of these cases: if a presumption cannot satisfy Tot’s “rational connection” test, it is unconstitutional; and if a presumption can satisfy the “reasonable doubt” standard, it is constitutional. As discussed below, I conclude that the presumption at play here fails the “rational connection” test, so I need not wade into the murky water submerging presumptions that survive “rational connection” but fail “reasonable doubt.”
Another principle from Barnes and Tot explains the relationship between a presumption and a de facto shift of the production burden. The Barnes Court said:
It is true that the practical effect of instructing the jury on [an] inference ... is to shift the burden of going forward with evidence to the defendant.... In Tot v. United States, the Court stated that the burden of going forward may not be freely shifted to the defendant. Tot held, however, that where there is a “rational connection” between the facts proved and the fact presumed or inferred, it is permissible to shift the burden of going forward to the defendant.
Barnes, 412 U.S. at 846 n. 11, 93 S.Ct. 2357 (citations omitted).
Finally, after Barnes, in County Court of Ulster Cty. v. Allen, 442 U.S. 140, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979), the Suprerne Court offered another discussion of presumption law, explaining that presumptions can be permissive or mandatory. Permissive presumptions allow, but do not require, the trier of fact to infer an “elemental fact” (i.e., the existence of an element of the crime) from proof by the prosecution of a “basic” or “evidentiary” fact. Id. at 156-57, 99 S.Ct. 2213. Because such a permissive presumption “does not shift the burden of proof, it affects the application of the ‘beyond a reasonable doubt’ standard only if, under the facts of the case, there is no rational way the trier could make the connection permitted.” Id. at 157, 99 S.Ct. 2213. A mandatory presumption, however, “may affect not only the strength of the ‘no reasonable doubt’ burden but also the placement of that burden; it tells the trier that he or they must find the elemental fact upon proof of the basic fact, at least unless the defendant has come forward with some evidence to *360 rebut the presumed connection between the two facts.” Id.
The Court went on to explain that the class of mandatory presumptions can be. further divided between “presumptions that merely shift the burden of production to the defendant, following the satisfaction of which the ultimate burden of persuasion returns to the prosecution; and presumptions that entirely shift the burden of proof to the defendant.” Id. at n. 16. With respect to mandatory presumptions that shift only the burden of production, the Court said that “[t]o the extent ... [the] presumption imposes an extremely low burden of production — e.g., being satisfied by ‘any’ evidence — it may well be that its impact is no greater than that of a permissive inference, and it may be proper to analyze it as such.” Id. To decide what type of presumption is involved in a case, said the Court, “the jury instructions will generally be controlling, although their interpretation may require recourse to the statute involved and the cases decided under it.” Id.
C. The Presumption at Issue
I now turn to the presumption at play in Powell’s case. Because Powell had a bench trial, no jury instructions were given. As a result, the district court resorted to both the text of section 7 and the surrounding caselaw. See Powell, 926 F.Supp.2d at 376-77. The district court read section 7—which provides that, until licensure is proved, “the presumption shall be that [a defendant] is not [licensed],” Mass. Gen. Laws ch. 278, § 7 (West 2014) (emphasis added)—to establish a mandatory presumption. Powell, 926 F.Supp.2d at 377. Looking to surrounding caselaw, such as Couture, the district court. determined that section 7’s mandatory presumption shifted only the burden of production and not the ultimate burden of persuasion. Id. Moreover, the district court determined that “the burden of production [could] be met by a minimal showing — that is, the mere production of a license.” Id. Consequently, the court analyzed the presumption as if it was permissive, rather than mandatory. Id. I agree with this much of the district court’s analysis.
At this point, I part ways with the district court. Again, the Allen Court held that permissive presumptions “affects the application of the ‘beyond a reasonable doubt’ standard”' — -and thus raise a constitutional concern — “only if, under the facts of the case, there is no rational way the trier could make the connection permitted.” 442 U.S. at 157, 99 S.Ct. 2213. Here, the district court concluded, “[o]ne can rest assured that ... any reasonable trier of fact could indeed ascertain a rational connection between the facts proved (the possession and carrying of a firearm) and the fact presumed (the absence of a license).” Powell, 926 F.Supp.2d at 377. In other words, according to the district court, one’s performance of conduct requiring a license rationally implies the lack of a license. With all due respect to the district court, this alleged connection is not rational. To see this error, one need only consider that the act of performing surgery does not suggest that the surgeon lacks a medical license.
The Commonwealth argues that the presumption under review makes use of a “rational connection” between the lack of a license and the defendant’s failure, in the face of firearms charges, to come forward with evidence of a license, rather than the mere possession of a firearm. This purported rational connection is troubling, to say the least. Under this theory, in the face of murder charges, a defendant’s failure to raise an alibi defense could give, rise to the presumption that he was at the *361 scene of the crime. To hold that lack of a license can be presumed from the defendant’s failure to raise the issue at trial is to elide the distinction between an element of a crime subject to proof by presumption and an affirmative defense. The fundamental principle that one is innocent until proven guilty would be weak indeed if one’s failure to present a defense was sufficient to imply proof of guilt.
Under the Antiterrorism and Effective Death Penalty Act of 1996 (“AEDPA”), a state ruling cannot contradict clearly established federal law. 28 U.S.C. § 2254(d)(1). If federal law is unclear, or if the state ruling is consistent with federal law, then the state wins and habeas is not granted. Id. As I am unable to perceive a reading of the SJC’s disposition of Powell’s due process claim that does not contradict clearly established federal law as determined by the Supreme Court, I conclude that the AEDPA standard has been met. To the extent that the SJC in Powell, through reference to Jones, elevated the “comparative convenience” test over the “rational connection” test, the adjudication was “contrary to” federal law. Further, to the extent that the SJC, again through reference to Jones, found the “rational connection” test satisfied by the presumption at issue, the adjudication involved an “unreasonable application” of federal law.
I respectfully dissent.

. The difference between a Firearm Identification Card (“FID card”) and a license is not important to my analysis, nor is the difference between possessing and carrying. For simplicity I refer to Powell as having been *350 charged with “possessing a firearm without a license.”