## COMMONWEALTH vs. CHRISTOPHER J. FARLEY.

No. 04-P-811.

Worcester. May 13, 2005. - October 26, 2005.

Present: DUFFLY, COHEN, & KATZMANN, JJ.

*Firearms. License. Practice, Criminal,* Dismissal, Affirmative defense, Instructions to jury. *Statute,* Construction.

At the trial of a criminal complaint charging the defendant with possession of a firearm without a license to carry, in violation of G. L. c. 269, § 10(*a*), the defendant properly brought a motion to dismiss the complaint to test whether he should have been charged criminally rather than civilly. [859-860]

This court concluded that G. L. c. 140, § 131(*m*), which, under limited circumstances, subjects a person possessing a firearm without a license to carry (in violation of G. L. c. 269, § 10[*a*]) only to civil sanctions, provided the defendant at a criminal trial an affirmative defense to the charge of unlawful possession of a firearm without a license to carry [860-861], and that the defendant met his burden of production with regard to the affirmative defense, thereby shifting the burden to the Commonwealth to present evidence establishing beyond a reasonable doubt that the defense did not exist [861-863]; therefore, the judge's failure to give a requested instruction that would have informed the jury that the Commonwealth had the burden to prove beyond a reasonable doubt that the defendant did not qualify for the exemption from criminal sanctions created a substantial risk of a miscarriage of justice requiring reversal of the defendant's conviction [863-867].

COMPLAINT received and sworn to in the Westborough Division of the District Court Department on August 16, 2001.

The case was tried before *Paul S. Waickowski,* J.

*Dana Alan Curhan* for the defendant.

*David W. Waterfall,* Assistant District Attorney, for the Commonwealth.

DUFFLY, J. When the driver of one vehicle saw what he thought was a gun in the defendant's vehicle as both traveled down a highway, he contacted the police. A State trooper

stopped the defendant and arrested him when it became apparent that, although he had a firearm identification (FID) card permitting him to transport the two rifles and the shotgun that were in his truck, he did not have a valid license to carry the handgun that also was in the truck. He was charged with one count of unlawful possession of a firearm without a license to carry, pursuant to G. L. c. 269, § 10(*a*).[1] The defendant appeals from his conviction by a District Court jury.

The issues in this appeal involve interpretation of G. L. c. 140, § 131(*m*), as appearing in St. 1998, c. 358, § 18,[2] which, in relevant part, provides: "Notwithstanding the provisions of section 10 of chapter 269, any person in possession of a firearm, rifle or shotgun whose license issued under this section is invalid for the sole reason that it has expired, but who shall not be disqualified from renewal upon application therefor under this section, shall be subject to a civil fine . . . ."[3] The limited exemption from the imposition of criminal sanctions under G. L. c. 269, § 10, that is provided by G. L. c. 140, § 131(*m*), is not available if (1) "such license has been revoked or

---

[1]The defendant also was charged with two counts of assault by means of a dangerous weapon, G. L. c. 265, § 15B, but was acquitted of both those charges.

[2]The quoted language was originally inserted by St. 1998, c. 180, § 41. Statute 1998, c. 358, § 8, clarified that earlier version of G. L. c. 140, § 131(*m*).

[3]More fully, G. L. c. 140, § 131(*m*), as appearing in St. 1998, c. 358, § 8, provides in pertinent part:

> "Notwithstanding the provisions of section 10 of chapter 269, any person in possession of a firearm, rifle or shotgun whose license issued under this section is invalid for the sole reason that it has expired, but who shall not be disqualified from renewal upon application therefor under this section, shall be subject to a civil fine of not less than $500 nor more than $5,000 and the provisions of section 10 of chapter 269 shall not apply; provided, however, that the exemption from the provisions of said section 10 of said chapter 269 provided herein shall not apply if: (i) such license has been revoked or suspended, unless such revocation or suspension was caused by failure to give notice of change of address as required under this section; (ii) revocation or suspension of such license is pending, unless such revocation or suspension was caused by failure to give notice of a change of address as required under this section; or (iii) an application for renewal of such license has been denied."

suspended," (2) "revocation or suspension of such license is pending," or (3) "application for renewal of such license has been denied." We agree with the defendant that G. L. c. 140, § 131(*m*), provides a statutory defense to the crime of possession of a gun without a license to carry if the license "is invalid for the sole reason that it has expired" and that he is entitled to a new trial.

*Summary of facts and proceedings.* The jury could have found that on August 16, 2001, the defendant and his brother were driving down the highway in a green pickup truck, heading towards Framingham, when they became involved in an angry confrontation with a man driving a large truck headed in the same direction. The driver of the large truck observed what he believed was a gun protruding from the window of the defendant's vehicle and called the police. State Trooper Jeffrey Lundy responded to the call and, based on a description of the vehicle, stopped the defendant's truck in the breakdown lane. Trooper Lundy secured the defendant and his brother before looking in the cab of the truck. The trooper recovered two rifles, one shotgun, and a handgun (according to the defendant, he was transporting the guns to a new location). Another trooper arrived on the scene and Miranda warnings were administered. The defendant told the troopers that the weapons belonged to him and that he had an FID card but not a license to carry the handgun. When a database check confirmed that the defendant did not possess a valid license to carry the handgun, he was arrested.

Prior to trial, the defendant moved in the District Court to dismiss the firearms charge, arguing that he had an expired license to carry and that, under G. L. c. 140, § 131(*m*), he was only subject to a civil fine. After an evidentiary hearing, the motion judge denied the motion without issuing findings. At the ensuing jury trial, the defendant presented evidence that his license to carry a firearm had expired; that he had not sought renewal of the license; and that he had not been notified of any revocation or suspension of the license, or denial of a renewal application. The Commonwealth presented evidence that the defendant had filed an application for renewal of both his FID card and his license to carry; that, although the FID card was is-

sued, the request for a renewal of the license to carry had been denied; and that this information was conveyed to the defendant orally but not in writing. The defendant asked for an instruction that, in essence, would have required the jury to determine whether the Commonwealth had established beyond a reasonable doubt that the defendant's application for license renewal had been made and denied and that, because the Commonwealth failed to fulfil its burden, the defendant was not subject to criminal sanctions. The request was denied, and the defendant preserved his rights.[4] The defendant's motions for directed verdicts also were denied.

*Discussion.* General Laws c. 140, § 131(*m*), offers a safe harbor from potential criminal sanctions to certain gun owners whose licenses have expired. The provision appears to have been enacted in the wake of legislation that significantly decreased the effective period of a license to possess a firearm that had already been issued. Prior to the 1998 enactment of § 131(*m*), that period was "five years, expiring on the anniversary of the applicant's date of birth occurring not less than four years but not more than five years from the date of issue." G. L. c. 140, § 131, eighth par., as appearing in St. 1986, c. 481 § 2. On July 23, 1998, legislation was passed reducing the effective period to one year, St. 1998, c. 180, § 73, so that licenses that had been issued to those with birth dates falling between July 1 and December 31 would now expire on the holder's birthday in 1999 and that licenses of those with birth dates between January 1 and June 30 would expire on the holder's birthday in 2000. At the same time, the Legislature enacted G. L. c. 140, § 131(*m*), inserted by St. 1998, c. 180, § 41, which, as noted, provided a safe harbor from criminal sanctions by excluding from the provisions of G. L. c. 269, § 10, "any person in possession of a firearm, rifle or shotgun whose license issued under this section is invalid for the sole reason that it has expired, but who shall not be disqualified

<hr>

[4]The requested instruction was denied on the asserted ground that G. L. c. 140, § 131(*m*), is inconsistent with G. L. c. 140, § 131(*q*), inserted by St. 1998, c. 180, § 41 ("nothing in this section shall authorize the . . possession . . . of any weapon . . . in such manner that is[] prohibited by state or federal law"). The Commonwealth does not press this position in this appeal.

from renewal upon application therefore under this section."[5] Such a person "shall be subject to a civil fine . . . and the provisions of section 10 of chapter 269 shall not apply" so long as the statutory conditions are also met. See note 3, *supra.*

"We construe a statute in accord with 'the intent of the Legislature ascertained from all its words construed by the ordinary and approved usage of the language, considered in connection with the cause of its enactment, the mischief or imperfection to be remedied and the main object to be accomplished, to the end that the purpose of its framers may be effectuated'. . . ." *Champigny* v. *Commonwealth,* 422 Mass. 249, 251 (1996), quoting from *Telesetsky* v. *Wright,* 395 Mass. 868, 872-873 (1985). It is apparent from the language of G. L. c. 140, § 131(*m*), and the firearms licensing scheme as a whole, particularly when considered in light of legislation that was enacted within the same time frame, that the Legislature intended to exempt from the imposition of criminal sanctions those whose licenses became invalid inadvertently, but who would otherwise not be disqualified from holding a valid license.

General Laws c. 140, § 131(*m*), does not, by its terms, provide that certain violations of the firearms licensing statute be made totally and permanently noncriminal. Compare *Commonwealth* v. *Mongardi,* 26 Mass. App. Ct. 5, 6 (1988), quoting from St.

---

[5]We recognize that, because it is phrased in the future tense, the language, "who shall not be disqualified from renewal upon application therefore," could also be read to require a gun holder to seek renewal of an expired license after he or she has been found to be in unlicensed possession of a firearm. This would require the prosecutor to suspend prosecution until the outcome of the licensing proceeding and would also require the licensing agent to ignore the fact of the defendant's arrest, normally a disqualifying event. We reject this interpretation. We do not think the Legislature intended that G. L. c. 140, § 131(*m*), would be available, not on the basis of the defendant's status at the time of the offense, but on his or her successful application in the future. This "reading of [the] statute would be inconsistent with legislative intent, [and] we look beyond the words of the statute." *Attorney Gen.* v. *School Comm. of Essex,* 387 Mass. 326, 336 (1982). "The object of all statutory construction is to ascertain the true intent of the Legislature from the words used. If a liberal, even if not literally exact, interpretation of certain words is necessary to accomplish the purpose indicated by the words as a whole, such interpretation is to be adopted rather than one which will defeat that purpose." *Lehan* v. *North Main St. Garage, Inc.,* 312 Mass. 547, 550 (1942).

1986, c. 35, § 10 (prior act was amended to provide that certain minor automobile law violations "shall be deemed civil motor vehicle infractions and not criminal offenses, and all statutes, ordinances, by-laws or regulations heretofore providing for such automobile law violations shall be so interpreted"). Rather, under the statute, unlicensed possession of a firearm remains a crime, but in limited circumstances the "innocent" offender is subject only to civil sanctions.[6]

1. *Initial determination.* The statute does not provide a mechanism for judicial review of a determination by the prosecutor that a defendant who is discovered carrying a gun without a license should be charged criminally rather than civilly. It appears to us that the motion to dismiss filed by the defendant in this case was a procedurally appropriate way in which to join the issue.[7]

The defendant may, in this way, challenge the criminal

---

[6]We recognize that a defendant holding an expired license could, under the 1998 version of G. L. c. 140, § 131(*m*), choose to delay seeking renewal if he became aware of a disqualifying circumstance that might thereby result in the denial of his application. For example, a gun owner with a pending G. L. c. 209A order might delay seeking renewal until he is no longer subject to the disqualification. Perhaps to ameliorate this problem, the Legislature amended G. L. c. 140, § 131(*m*), in 2004, to limit the safe harbor period to "90 days beyond the stated expiration date on the license." St. 2004, c. 150, § 15.

[7]Historically, trial court judges of the Commonwealth had a role in the licensing of firearms; later, they continued to have a role in the review of licensing decisions. See Marr, The Massachusetts Firearms Permitting Process, 89 Mass. L. Rev. 111 (2005) (Marr). Marr notes that, until 1957, anyone wishing to obtain a license could apply to a "justice of a [Massachusetts] court," and that in that year the list of licensing authorities was limited to "[t]he chief of police or the board or officer having control of the police in a city or town, or the commissioner of public safety, or persons authorized by them, respectively." *Id.* at 117, quoting from St. 1957, c. 688, § 15. The change in legislation was based on a 1956 report promulgated by the Department of Public Safety, noting that, of 63,000 licenses issued in a two-year period, less than forty had been issued by judges. Marr, *supra.* The report proposed an appeals process and recommended that appeals be to a judge of the District Court, "because it was the opinion of the majority that judges, with their knowledge of law and their ability to sift fact from fiction, could decide with the best interests of the public at large in mind." Marr, *supra,* quoting from Department of Public Safety Report on Its Investigation and Study of the Laws Pertaining to the Sale, Rental, Leasing, Carrying and Use of Firearms and the Possession, Carrying and Use of Dangerous Weapons, Nov. 26, 1956, 1957 House No. 3075. A judicial review provision was eventually enacted in 1960 by St. 1960, c. 293. Marr, *supra* at 118.

complaint on the basis that he was not, at the time of the offense, disqualified from holding a license to carry,[8] and that his license had not been suspended or revoked, no suspension or revocation was pending, and no renewal application had been denied. G. L. c. 140, § 131(*m*).[9] The motion judge's determination whether, under § 131(*m*), a defendant can be sanctioned civilly or criminally involves no independent exercise of discretion and does not usurp the role of the licensing authority.[10] The determination is limited to whether, as an initial matter, any of the seven statutorily enumerated disqualifying events or conditions apply, and then whether (1) the license has been suspended or revoked, (2) a license suspension or revocation is pending, or (3) an application for renewal of the license has been denied.

2. *Affirmative defense.* The issue raised by this appeal is whether, in the circumstances presented and in the absence of any evidence that one of the seven statutory disqualifying conditions applied, it is an affirmative defense to the charge of carrying a firearm without a license that the defendant was never denied a request for license renewal.

General Laws c. 140, § 131(*m*), provides a statutory justifica-

---

[8]The are seven events or conditions that would disqualify a person from holding a license to carry under G. L. c. 140, § 131(*d*), as inserted by St. 1998, c. 180, § 41. An applicant is disqualified if he or she (1) has been convicted or adjudicated a youthful offender or delinquent of a felony, a misdemeanor punishable by imprisonment for a term of more than two years, a violent crime, any crime relating to firearm violations that would subject the individual to imprisonment, or any crime relating to controlled substances; (2) has been confined to a hospital or institution for mental illness, unless a physician certifies that the illness would not affect the individual's ability to possess a firearm; (3) has been treated or confined for drug addiction or habitual drunkenness, unless after five years from the date of treatment or confinement, a physician certifies that the individual is cured; (4) is less than twenty-one years old; (5) is an alien; (6) is subject to a specified G. L. c. 209A order or similar order from another jurisdiction; or (7) is subject to an arrest warrant.

[9]Under § 131(*m*), if the revocation or suspension of a license is due to the license holder's failure to give notice of a change in address, or if a revocation or suspension is pending due to such a failure, the exemption from criminal sanctions may still apply. See note 3, *supra.*

[10]General Laws c. 140, § 131(*m*), specifically limits the inquiry to whether a defendant was, at the time of the offense, "disqualified" from holding a license and does not implicate the licensing authority's discretionary determination that an applicant is not a "suitable person" to hold a license. G. L. c. 140, § 131(*d*).

tion to a charge of carrying a firearm without a valid license, where the license has become invalid *solely* by virtue of its expiration as defined by the statute. As such, we think that it provides an affirmative defense to a criminal charge. "An affirmative defense is defined as a matter which, assuming the charge against the accused to be true, constitutes a defense to it; an 'affirmative defense' does not directly challenge any element of the offense."[11] 21 Am. Jur. 2d Criminal Law § 217 (1998). Further, an affirmative defense "involves a matter of . . . justification peculiarly within the knowledge of the defendant on which he can fairly be required to adduce supporting evidence." Model Penal Code § 1.12(3)(c) (1985). Like the defense that a license exists, under G. L. c. 269, § 10(*h*), G. L. c. 140, § 131(*m*), appears to provide an exception to the general prohibition against carrying a firearm without a valid license. See *Commonwealth* v. *Parzick, ante* 846, 851 (2005). A gun owner who falls within the statutory prerequisites is subject to civil sanctions when the lack of a license is statutorily justified or excused and when the license is "invalid for the sole reason that it has expired."[12] G. L. c. 140, § 131(*m*).

Where a defendant asserts an affirmative defense, he takes on

---

[11]Our appellate courts have held that the absence of a license is not an element of the crime of carrying a firearm in violation of G. L. c. 269, § 10(*a*), and "[t]he holding of a valid license brings the defendant within an exception to the general prohibition against carrying a firearm, and is an affirmative defense," *Commonwealth* v. *Jones,* 372 Mass. 403, 406, 410 (1977), placing on the defendant the burden to present evidence of the license's existence.

Some jurisdictions have held that the prosecution is responsible for proving beyond a reasonable doubt that the defendant lacks a required license to carry the weapon. However, in such jurisdictions, unlike Massachusetts, lack of a license is an essential part of the offense that must be proved by the prosecution to the same degree as possession of the weapon. See *State* v. *Beauton,* 170 Conn. 234, 240 (1976); *People* v. *Brownlee,* 17 Ill. App. 3d 535, 539-540 (1974); *Commonwealth* v. *McNeil,* 461 Pa. 709, 714-715 (1975); *State* v. *Hodges,* 172 W. Va. 322, 327-328 (1983). Compare *Commonwealth* v. *Jones, supra* at 410; *Commonwealth* v. *Hampton,* 26 Mass. App. Ct. 938, 940 (1988).

[12]The Commonwealth argues that G. L. c. 140, § 131(*m*), does not provide an affirmative defense to a crime, but that it is jurisdictional in nature, providing an alternative to criminal prosecution if certain conditions are met; whether the conditions were met is, according to the Commonwealth, a matter of law.

Even if it is not an affirmative defense, we think the issue is one for the jury. This case is analogous to the factual determination that gives rise to enhanced penalties after a conviction. As the United States Supreme Court

the burden of production. See *Commonwealth* v. *Rauseo*, 50 Mass. App. Ct. 699, 703 (2001), quoting from *Commonwealth* v. *Jones*, 372 Mass. 403, 408 (1977) ("Such a shift may be proper if there is 'manifest disparity in convenience of proof and opportunity for knowledge' "). See also G. L. c. 278, § 7. The Commonwealth does not have the burden of disproving an affirmative defense "unless and until there is evidence supporting such defense." *Commonwealth* v. *Cabral*, 443 Mass. 171, 179 (2005), quoting from Model Penal Code § 1.12(1), (2) (1985). Once evidence of the defense is presented, it is the Commonwealth's burden to establish beyond a reasonable doubt that the defense does not exist. *Commonwealth* v. *Jones, supra* at 406. See, e.g., *Commonwealth* v. *Rodriguez*, 370 Mass. 684, 688-689 (1976).

Here, the burden was on the defendant to present sufficient evidence to contest the presumed fact that he had no justification for his lack of a license. The defendant produced evidence at trial that his license to carry the handgun had expired on July 28, 1998; that as of the date of his arrest on August 16, 2001, he had not received notice that his license to carry had been revoked, suspended, or denied; and that he had not submitted a renewal application. The defendant testified that although he had filled out an application and intended to submit it at some point, he had decided to put off seeking renewal after a conversation in November, 1999, with Lieutenant William McCarthy of the Framingham police department, whom he knew. Lieutenant McCarthy told him not to file the application because

---

stated in *Apprendi* v. *New Jersey*, 530 U.S. 466, 490 (2000), "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt. With that exception, we endorse the statement of the rule set forth in the concurring opinions in that case: 'It is unconstitutional for a legislature to remove from the jury the assessment of facts that increase the prescribed range of penalties to which a criminal defendant is exposed. It is equally clear that such facts must be established by proof beyond a reasonable doubt.' [*Jones* v. *United States*, 526 U.S. 227, 252-253 (1999) (Stevens, J., concurring).]" See *Commonwealth* v. *Beale*, 434 Mass. 1024, 1025 (2001) (because the value of the property destroyed distinguishes a felony conviction from a misdemeanor, "the value of the property must be treated as an element of the felony of malicious destruction of property" and a jury must find, beyond a reasonable doubt, that the value of property exceeds $250).

of a "situation pending" that would result in the denial of the defendant's application at that time. The defendant therefore applied only for an FID card, which would permit him to possess, but not to carry, the handgun; he handed the application form, on which he had originally checked that he was seeking a license to carry, to Lieutenant McCarthy, who told the defendant that he would make the change on the form to reflect that the defendant was only applying for an FID card. The defendant was issued the FID card on January 27, 2000, and a copy of the card was introduced in evidence. The defendant did not receive a written communication from the Framingham police that an application for renewal of a license to carry had been denied.

Viewed favorably to the defendant, this evidence was sufficient to raise the affirmative defense and thereby to shift to the Commonwealth the burden of establishing beyond a reasonable doubt that the defense did not exist. See *Commonwealth* v. *Torres*, 420 Mass. 479, 491-492 (1995). The Commonwealth presented no evidence to establish that, had the defendant applied, the statute would have mandated denial of his application under one of the seven disqualifying criteria.

For the reasons we have discussed, we disagree with the Commonwealth that, by construing G. L. c. 140, § 131(*m*), as providing an affirmative defense, a jury will be called upon to engage in impermissible review of the licensing authority's decision because the jury "would have to determine . . . whether the defendant's license was invalid 'for the sole reason that it has expired' and whether a defendant 'was disqualified from renewal.' " G. L. c. 140, § 131(*m*). Ascertaining whether a license had expired or had, at the time of the offense, been suspended or revoked; whether a license suspension or revocation was pending; whether an application for renewal of the license had been denied; or whether a disqualifying condition was present is a determination that has no bearing on the licensing authority's responsibility to issue or deny a license in accordance with G. L. c. 140, § 131(*d*).[13]

2. *Request for jury instructions.* The jury were not given instructions that would have informed them that it was the

---

[13]Review of a licensing decision implicates a different provision of the same statute. See G. L. c. 140, § 131(*f*).

Commonwealth's burden to prove beyond a reasonable doubt that the defendant did not qualify for the exemption. Defense counsel requested that the jury be instructed that the law provides an exemption to persons whose previously issued license has expired, where the license has not been suspended or revoked and an application for renewal has not been denied, and that the Commonwealth must prove beyond a reasonable doubt that the defendant did not come within the exception to the statute. The proposed request included language that the law "requires that in order to revoke, suspend or deny an application for renewal, the [licensing authority] must notify the applicant of the reason for such action or denial in writing." The request was denied.

Extensive colloquy on the basis for the requested instruction focused on G. L. c. 140, § 131(*m*), and defense counsel's argument that the statute provides an affirmative defense to the licensing requirement. It was on this basis (and not because the instruction also included the language that a denial must be in writing, an aspect of the proposed instruction that was not discussed) that the requested instruction was rejected by the trial judge, and defense counsel objected. On this basis, it was error to refuse to instruct as the defendant requested. "That instruction, if given, would have informed the jury in express terms that since there was sufficient evidence to raise the issue of [the affirmative defense], the Commonwealth had the burden of showing beyond a reasonable doubt that the defendant [was not entitled to assert it because his license had been revoked, suspended, or denied]." *Commonwealth* v. *Rodriguez*, 370 Mass. at 691-692.

The question before us is whether, considered in light of the appropriate standard of review, that error requires reversal. Although the matter is not without doubt,[14] we think that the defendant "[brought] the alleged error to the attention of the judge in specific terms [thereby giving] the judge an opportunity to rectify the error," *Commonwealth* v. *Torres*, 420 Mass. at 482-483, quoting from *Commonwealth* v. *Keevan*, 400 Mass.

---

[14]The instruction should not have been given as proposed because it included the language that "in order to deny" an application there must be notice in writing. See *infra*.

557, 564 (1987), and adequately preserved the defendant's rights. See Mass.R.Crim.P. 24(b), 378 Mass. 895 (1979). We need not resolve the question because our decision would be the same even if we reviewed to determine whether the failure to instruct created a substantial risk of a miscarriage of justice. See *Commonwealth* v. *Freeman*, 352 Mass. 556, 563-564 (1967); *Commonwealth* v. *Torres*, *supra* at 483.

Over defense counsel's objection, a police officer was permitted to testify that it is "unlawful to carry a pistol without a license to carry." The instruction on the charge of illegally possessing a firearm informed the jury that the Commonwealth had to prove that the defendant knew he was in possession of a firearm and that he did not have a license to carry that firearm. Nothing in the instructions informed the jury of the defense available under G. L. c. 140, § 131(*m*), and of the Commonwealth's burden to disprove that defense.[15] The failure to so instruct created a substantial risk of a miscarriage of justice requiring reversal; the instruction must be given at any retrial if sufficient evidence to raise the issue is presented. See *Commonwealth* v. *Rodriguez*, 370 Mass. at 692.

We reject the defendant's claim that an instruction should have been given that G. L. c. 140, § 131(*e*), requires that the police department must "notify the applicant of the reason for such denial in writing" in order to deny an application for renewal, or to revoke and suspend a license. Although the evidence was contested whether the defendant sought renewal of his expired license, and there was evidence that the defendant had been orally informed of the denial of his renewal application, there was no evidence that written notification of the denial was ever sent to the defendant and received by him.

The statute requires that "[t]he licensing authority shall, within 40 days from the date of application, either approve the application and issue the license or deny the application and

[15]Also, during deliberations, the jury asked two questions that appear to relate to the affirmative defense issue: first, they inquired whether a gun owner is in "noncompliance" "after a valid license to carry a handgun expires." Second, they asked, "What happens if we cannot agree on one out of the six verdicts?" Of the six charges, three against the defendant and three against a codefendant, the jury returned verdicts of not guilty on all but the illegal possession of a firearm charge.

notify the applicant of the reason for such denial in writing." G. L. c. 140, § 131(*e*), inserted by St. 1998, c. 180 § 41. In addition, "[a]ny revocation or suspension of a license shall be in writing and shall state the reasons therefor." G. L. c. 140, § 131(*f*), inserted by St. 1998, c. 180 § 41. The applicant may file a petition to seek judicial review of an adverse decision "within either 90 days after receiving notice of such denial, revocation or suspension or within 90 days after the expiration of the time limit during which the licensing authority is required to respond to the applicant." *Ibid.*

General Laws c. 140, § 131(*f*), does not contain language that a denial is ineffective if not in writing.[16] Rather, the requirement of notice in writing is directed to the applicant's statutory right to seek review of an adverse decision: the receipt of the notice triggers the running of the review period, as does the failure to provide notice within 40 days from the date of application. G. L. c. 140, § 131(*e*). General Laws c. 140, § 131(*m*), does not state that notice of revocation, suspension, or denial must be made in accordance with the statute. We have held that in certain circumstances, for purposes of appeal, notice under the statute may be constructive. See *Commonwealth* v. *Hampton*, 26 Mass. App. Ct. 938, 939, 940 (1988). In *Hampton*, actual written notice was not required where there was evidence that the defendant had been told by a police officer, who was in the process of confiscating her weapons in connection with a drug raid, that he did not consider her a suitable person to carry a firearm. *Id.* at 938-939. Her license was later revoked on that basis, but because she had changed her address, the defendant did not receive written notice of that revocation. *Id.* at 939, 940. See *Police Commr. of Boston* v. *Robinson*, 47 Mass. App. Ct. 767, 772-774 (1999), and cases cited therein (discussing circumstances in which, despite the absence of proof of receipt by the applicant of written notice of revocation, constructive notice may be found where there is evidence that the defendant wilfully evaded notification). In the context of a properly raised

---

[16]Compare an earlier version of G. L. c. 140, § 129B, prior to the enactment of St. 1998, c. 180, § 29 (relating to a license to possess, not carry, a firearm), which provided that a receipt for an application fee acts as "a valid substitute" for an FID card in the absence of written notice that the requested license had been denied.

affirmative defense pursuant to G. L. c. 140, § 131(*m*), it is for the jury to decide whether evidence of oral notice of denial was credible and sufficient to meet the Commonwealth's burden to establish beyond a reasonable doubt that the defense was unavailable to the defendant.[17]

*Conclusion.* The judgment is reversed, and the matter is remanded for further proceedings consistent with this opinion.

*So ordered.*

---

[17]The Commonwealth argues that even if the question of the denial of the license application constitutes an affirmative defense, the evidence reflects that the defendant may not avail himself of the exemption provided by G. L. c. 140, § 131(*m*), because "he was disqualified from receiving a license to carry because of his pending criminal matters." There was no evidence before the jury that the defendant was disqualified from receiving a license, either because of a prior conviction, G. L. c. 140, § 131(*d*)(i), or because he was currently subject to G. L. c. 209A order, G. L. c. 140, § 131(*d*)(vi). Recall that the defendant was issued an FID card; conditions that disqualify a petitioner from receiving an FID card under G. L. c. 140, § 129B(1)(i)-(ix), are substantially identical to those that disqualify an applicant from receiving a license to carry under G. L. c. 140, § 131(*d*)(i)-(vii).

In a sidebar discussion during trial, the prosecutor referred to "domestics" on the defendant's record and stated, "One was continued without a finding, the other was a straight dismissal, and he was told that you are deemed unsuitable at the present time to have a license to carry." The question of unsuitability is not a disqualifying condition or event that prevents a defendant from availing him or herself of the exemption provided by G. L. c. 140, § 131(*m*). See note 8, *supra.*