NOTICE: All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports. If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

12-P-1922                                         Appeals Court

COMMONWEALTH vs. STEPHEN M. INDRISANO.


No. 12-P-1922.

Essex.      October 1, 2014. - August 4, 2015.

Present: Berry, Hanlon, & Carhart, JJ.


Firearms. Evidence, Firearm, Presumptions and burden of proof,
    Rebuttal, Argument by prosecutor, Prior inconsistent
    statement, Consciousness of guilt. License. Practice,
    Criminal, Presumptions and burden of proof, Affirmative
    defense, Instructions to jury, Affidavit, Admissions and
    confessions, Argument by prosecutor.



Complaint received and sworn to in the Lynn Division of the
District Court Department on March 19, 2009.

The case tried before Stacey Fortes-White, J., and a motion
for a new trial was heard by her.


Mark G. Miliotis for the defendant.
Ronald DeRosa, Assistant District Attorney, for the
Commonwealth.


HANLON, J. After a jury trial, the defendant was convicted

of possession of a firearm and possession of a loaded firearm,

both without a license.[1]  His motion for a new trial was denied.[2]
On appeal, his chief arguments are the following:  (1) the judge
improperly shifted the burden of proof with respect to his
affirmative defense of "licensure"; (2) it was error for the
judge to give a consciousness of guilt instruction; (3) it was
error to allow the Commonwealth to offer rebuttal evidence; (4)
the prosecutor's cross-examination of the defendant with his
prior inconsistent statements was improper, as was the
prosecutor's summation referring to that evidence; and (5) the
judge erroneously denied the defendant's motion for new trial.
We affirm.

Background.  On March 18, 2009, Sergeant Richard Ball of
the Massachusetts State Police stopped the defendant in his GMC
pickup truck near the intersection of Route 107 and Route 60 in
Saugus.[3]  When Ball activated the lights and siren on his
unmarked police cruiser, the defendant immediately slowed and
pulled over to the right shoulder.  However, he then traveled
another five hundred feet before coming to a complete stop.  As
the truck slowed, Ball was driving immediately behind it; he

---

[1] On the first day of trial, the charge of possession of
ammunition without a firearm identification card was dismissed
at the request of the Commonwealth.

[2] Both appeals were combined in the one docket number.

[3] The defendant was stopped for a civil motor vehicle
infraction -- changing lanes and making a left turn without
signaling.

observed, through the large window in the back of the truck cab, the defendant reach his arm behind the "split bucket" passenger seat. The defendant's arm and shoulder were moving up and down, and he appeared to be "covering something up" that was in back of the seat.

Approaching the passenger's side of the defendant's truck, Ball said to the defendant, "[S]how me your hands"; the defendant complied. When Ball asked whether the defendant had any weapons, the defendant replied that he had a knife in his pocket. Ball asked the defendant to get out of the truck so that Ball could "pat him down and check for weapons for [Ball's] safety." Ball then recited to the defendant his Miranda rights.

After acknowledging that he understood his Miranda rights, the defendant told Ball that there was a gun in the tool bag behind the seat of the trunk. Ball found the loaded gun where the defendant said it would be, covered by a T-shirt. The defendant also stated that "it was his son's gun," and that he needed it for "transport[ing] a lot of money." Ball arrested the defendant, secured the loaded gun, and took it back to the State police barracks in Revere.[4]

Prior to trial, the defendant moved to dismiss the firearms charges, arguing that his constitutional rights were violated by

---

[4] Afterwards, the gun was transported to the ballistics lab for testing, where it was test fired and proved to be a firearm loaded with five rounds of ammunition. See G. L. c. 140, § 121.

the Massachusetts statutes regulating possession of firearms and by the Massachusetts firearms licensing statutes. In support of the motion to dismiss and the motions to reconsider the judge's denial of his motion to dismiss, the defendant filed at least two affidavits in which he recited that, in 1998, when he sought to renew his expired license to carry a firearm, the chief of police in Winthrop told him that his license would not be renewed.

The Commonwealth filed a motion in limine, seeking to preclude the defendant's affirmative defense of license. In response, the defendant and his attorney represented in affidavits that the defendant's earlier affidavits were mistaken. The defendant's new position was that, when he went to the Winthrop police station to renew his license, the information he received meant only that there was no need to apply at that time, not that his application was denied. The judge denied the Commonwealth's motion in limine. Thereafter, the defendant testified at trial that he was surprised when Ball arrested him because he had a license to carry a firearm,

although he knew at the time that the license had expired.[5]  He was convicted of both counts.[6]

Discussion. 1. <u>Affirmative defense</u>.[7]  The defendant argues that the judge improperly shifted the burden of proof with regard to his affirmative defense of license.  He contends that providing his expired license was sufficient to raise the affirmative defense and that the burden then shifted to the Commonwealth to disprove the defense beyond a reasonable doubt.  The defendant also asserts that the judge improperly instructed the jury on his affirmative defense, causing confusion about the burden of proof.

It is "an offense to 'knowingly' possess a firearm outside of one's residence or place of business without also having a license to carry a firearm that has been issued under the

---

[5] Trial exhibit two was the defendant's license to carry a firearm; it expired in 1993.  Trial exhibit three was his renewed license that expired in 1998.

[6] There are no issues before this court relating to the stop, the seizure of the gun, or whether the gun was a firearm, as defined by the statute.  See G. L. c. 140, § 121.

[7] As a preliminary matter, we reject the Commonwealth's argument that the defendant "never complied with the procedural rules to raise an affirmative defense."  In advance of trial, at least by the time of the hearing on the Commonwealth's motion in limine, the Commonwealth was on notice that the defendant would argue that he was subject only to civil penalties because he had an expired license and he had never filed an application that was denied.  The defendant's first affidavit to that effect was filed in court on January 27, 2012.  The trial began on February 15, 2012, and it does not appear from the record before us that the Commonwealth sought additional time to rebut the defense.

licensing provisions of G. L. c. 140, § 131." Commonwealth v. Powell, 459 Mass. 572, 588 (2011), cert. denied, 132 S. Ct. 1739 (2012). See G. L. c. 269, § 10(a). "[A] defendant charged with a possessory firearms offense [under G. L. c. 269, § 10,] can raise the defendant's own license as a defense." Commonwealth v. Humphries, 465 Mass. 762, 767 (2013). "Such a defendant must, prior to trial, provide notice of intent to raise the defense of license, . . . and must produce 'some evidence' of license at trial before the burden shifts to the Commonwealth to prove the absence of the defendant's license beyond a reasonable doubt." Ibid. See Commonwealth v. Gouse, 461 Mass. 787, 806 (2012); Mass.R.Crim.P. 14(b)(3), as appearing in 442 Mass. 1518 (2004).[8] A limited exemption is available under G. L. c. 140,

---

[8] In Humphries, the defendant was charged as a joint venturer with a codefendant who possessed (and fired) the firearm at issue. Id. at 763. In that circumstance, the court concluded: "[T]he reasons that support allocating to a defendant the burden to produce evidence of a firearms license, where the defendant is charged with actual possession of a firearm without a license, do not support allocating this burden to a defendant charged as a joint venturer of unlicensed possession of a firearm, where the firearm is actually possessed by a third party. '[I]mposing the burden of production on a joint venturer in these circumstances might be unfair because he would be in no better position than the prosecutor to ascertain whether an FID card [or license] had been issued to the person who allegedly possessed the ammunition [or carried the firearm].'" Id. at 770, quoting from Gouse, supra at 807 n.20. Because the existence of a license establishing a third party's lawful authority to carry a firearm does not fall 'peculiarly within the knowledge of the defendant on which he can fairly be required to adduce supporting evidence,' Commonwealth v. Vives, [447 Mass. 537, 540-541 (2006)], quoting Commonwealth v. Cabral,

§ 131(m), which "offers a safe harbor from potential criminal sanctions to certain gun owners whose licenses have expired." Commonwealth v. Farley, 64 Mass. App. Ct. 854, 857 (2005).

Under G. L. c. 140, § 131(i), as amended through St. 2004, c. 150, § 11, "[a] license to carry or possess firearms shall be valid, unless revoked or suspended, for a period of not more than 6 years from the date of issue . . . except that if the licensee applied for renewal before the license expired, the license shall remain valid for a period of 90 days beyond the stated expiration date on the license, unless the application for renewal is denied [or other exceptions not here relevant apply]".  However, under G. L. c. 140, § 131(m), inserted by St. 1998, c. 180, § 41, once the ninety-day "safe harbor" period expires, the former licensee still is subject only to a civil fine "and the provisions of section 10 of chapter 269 shall not

_____

[443 Mass. 171, 179 (2005)], it does not constitute an affirmative defense to joint venture possession of a firearm. See generally Commonwealth v. Cabral, supra at 180. Consequently, the affirmative defense of license provided by G. L. c. 278, § 7, is inapplicable in the circumstances of this case." Humphries, supra at 770.

The defendant, quoting from Cabral, supra at 180, argues that we should extend this reasoning to his situation, on the ground that "the existence of an expired firearms license and the applicability of the exemption is not something 'peculiarly within the knowledge of the defendant.'" We are not persuaded that the analogy applies. As the Commonwealth argues, the circumstances of the 1998 expiration were within the defendant's knowledge -- he not only filed affidavits about it, he produced the expired licenses, and he was in the best position to say whether he had applied to renew his license and been denied.

apply."  On the other hand, the statute provides an exception to that provision if:

> "(i) such license has been revoked or suspended, unless such revocation or suspension was caused by failure to give notice of change of address as required under this section; (ii) revocation or suspension of such license is pending, unless such revocation or suspension was caused by failure to give notice of a change of address as required under this section; or (iii) <u>an application for renewal of such license has been denied</u>" (emphasis supplied).

<u>Ibid</u>.

The first issue here is who had the burden of production under all of the circumstances of this case, and what that burden entailed.  During the Commonwealth's case-in-chief, the defendant, while cross-examining Ball, introduced evidence of, inter alia, the defendant's firearm license history "indicat[ing] that he had a license to carry a firearm that was issued in 1993 and expired in 1998."  There was no evidence that the defendant had applied for a license and been denied.  At the close of the Commonwealth's case, the defendant apparently filed a motion for a directed verdict of not guilty.  The record does not indicate what the judge heard from the defendant in support of his motion.[9]

---

[9] The trial transcript indicates only that defense counsel told the judge that he had "a motion," that the parties were heard "at sidebar," and that the "[e]ntire discussion at sidebar [was] completely inaudible . . ., sidebar microphone not turned on."

If it were the defendant's burden to produce some evidence that he qualified for the G. L. c. 140, § 131(m), civil sanction, rather than the penalties provided by G. L. c. 269, § 10, he did not meet it. On the other hand, if, as the defendant argues, production of his expired license satisfied his burden of production and shifted the burden of proof to the Commonwealth, the motion for a required finding should have been allowed. We are satisfied that this court's holding in Commonwealth v. Farley, supra at 862, provides the answer: "the burden was on the defendant to present sufficient evidence to contest the presumed fact that he had no justification for his lack of license" (emphasis supplied). The expired license itself, without some evidence that the defendant had never been denied a new license, was therefore insufficient.

During the defendant's case, the defendant testified not only that he had an expired license but also that he had never applied to renew the license; that he had never "receive[d] notice of a denial of an application"; and that his license had "[n]ever" "been revoked or suspended at any point in time." This evidence satisfied the defendant's burden of production. See id. at 863. ("Viewed favorably to the defendant, this evidence was sufficient to raise the affirmative defense and thereby to shift to the Commonwealth the burden of establishing beyond a reasonable doubt that the defense did not exist").

On cross-examination, the prosecutor read from the defendant's earlier affidavit, filed in support of his motion to dismiss, which stated that the defendant was "qualified to be licensed to carry a firearm and [had] previously been issued licenses up to November 14th '98 when the chief of the Winthrop Police Department unlawfully and arbitrarily denied the renewal of [his] license."[10]  The defendant agreed that he had signed the affidavits and that they represented his understanding at the time that he signed them, but he went on to say that "there was a misunderstanding of [his] interpretation of what was told to [him]."

Nevertheless, at that point, the defendant had agreed that he had filed affidavits swearing that his application for a renewal of his firearms license had been denied.  As a result, those prior affidavits properly were considered as substantive evidence, admissible as prior admissions of an opposing party.[11]

---

[10] The prosecutor also read from a second affidavit, wherein the defendant stated, "I am qualified to be licensed to carry a firearm and was also eligible on November 14th '98 when the chief of the Winthrop Police Department utilized unlawful and arbitrary criteria in denying the renewal of my license."

[11] Defense counsel objected when the prosecutor first mentioned the affidavits, but did not explain to the judge the basis for his objection.  See Mass. G. Evid. § 103(a)(1) (2014).  Nor did he object further to the use of the affidavits, except once, when the prosecutor asked the defendant whether his trial testimony was different from the affidavits, and defense counsel stated, "I'd object to the characterization, Judge.  It speaks for itself."  It does not appear from the record before this

See Smith v. Palmer, 60 Mass. 513, 520-521 (1850) ("The admissions of a party are not open to the same objection which belongs to parole evidence from other sources. A party's own statements and admissions are, in all cases, admissible in evidence against him, though such statements and admissions may involve what must necessarily be contained in some writing"); Mass. G. Evid. §§ 801(d)(2)(A), 1007 (2014). Despite the defendant's efforts to explain the contradictory affidavits, the issue thereafter was one for the jury.[12] We see no error.

2. Rebuttal testimony. The defendant next argues that the Commonwealth should not have been permitted to offer rebuttal evidence. In the defendant's view, that evidence did not respond to his evidence, but, instead, provided the Commonwealth

---

court that the defendant ever requested an instruction limiting the use of the affidavits to impeachment. See id. at § 105.

[12] In rebuttal, the Commonwealth called Jason Guida, director of the Firearms Records Bureau. Guida testified that the records of his agency showed only that the defendant had two expired licenses, the most recent expiring in 1998. He also stated that the records were incomplete, particularly regarding events that occurred prior to 2004, when the Bureau undertook to maintain licensing information indefinitely. Licensing authorities, including police departments, were "only required to maintain licensing information for six years." Guida also testified that, while the Bureau attempts to update its records when older, paper records are discovered, "it was a paper process and there were times when files were not transmitted to [his] office and entered into . . . [what he] call[ed] the Legacy Database." Guida testified, "[I]n this case as you're describing, if the chief or licensing officer told the individual that he is denied but did not issue a denial letter and send it to the Firearms Records Bureau, [the Bureau] would not have a record of it."

with an opportunity to supplement what should have been presented in its case-in-chief.  This argument also fails.  It is premised on the defendant's earlier argument that it was the Commonwealth's burden to produce evidence in its case-in-chief that the defendant was not shielded from the criminal consequences of G. L. c. 269, § 10, by the exception provided by G. L. c. 140, § 131(m).  As noted, we rejected that argument, concluding that the defendant had the burden of producing evidence that he faced only the civil penalties described in § 131(m).  Once he did so, the Commonwealth properly was given an opportunity to rebut that evidence.  See Commonwealth v. Howell, 49 Mass. App. Ct. 42, 50-51 (2000) ("The trial judge had broad discretion to allow the Commonwealth to introduce evidence that rebutted the defendant's theory of defense").

3.  Closing argument; prosecutor's use of inconsistent statements.  The defendant also challenges the prosecutor's use during closing argument of his prior inconsistent statements. We see no error.  "The rule of evidence is well settled that if a witness either upon his direct or cross-examination testifies to a fact which is relevant to the issue on trial the adverse party, for the purpose of impeaching his testimony, may show that the witness has made previous inconsistent or conflicting statements, either by eliciting such statements upon cross-examination of the witness himself, or proving them by other

witnesses."  Commonwealth v. Parent, 465 Mass. 395, 399-400 (2013), quoting from Robinson v. Old Colony St. Ry., 189 Mass. 594, 596 (1905).  See Mass. G. Evid. § 613(a)(2).  In addition, as discussed supra, once the defendant adopted during his cross-examination his statements made in earlier affidavits, they became admissible substantively as admissions of a party opponent.

4.  Jury instructions.  The defendant also argues that the judge improperly instructed the jury on the defendant's affirmative defense of licensure and that giving a consciousness of guilt instruction was inappropriate.  "We review jury instructions with regard to the Commonwealth's burden of proof in a criminal case to determine whether the instructions, taken as a whole, make clear the Commonwealth's burden to prove each element of the crime beyond a reasonable doubt."  Commonwealth v. Hoose, 467 Mass. 395, 412 (2014).

a.  Affirmative defense instruction.  As to the affirmative defense, the judge instructed the jury:

> "The statute exempts a defendant from criminal punishment who had, in effect, a license to carry a firearm issued at the time of his arrest.  Section 131(m) of Chapter 140 exempts a defendant from criminal penalties and instead imposes a civil penalty when certain conditions are met.  This exemption is intended to exempt from the imposition of criminal sanctions, those who[se] licenses became invalid inadvertently but who would otherwise not be disqualified from holding a valid license.

"The defendant is entitled to the criminal exemption if his license to carry was expired and he had not sought renewal of the license and he had not been notified of any revocation or suspension of the license or denial of a renewal application. As fact finders, you must determine from all of the credible evidence . . . whether the defendant had, in effect, a license to carry firearms under General Laws 140 and if he did, whether the Commonwealth -- and this is the additional element that they must prove with regard to the two offense[s] before the Court, whether the Commonwealth has disproved beyond a reasonable doubt that this exemption applies to the defendant. Once sufficient evidence of the defense is presented, it is the Commonwealth's burden to establish beyond a reasonable doubt that the defense does not exist."

The defendant did not object to the substance of the instruction.[13] On appeal, he argues primarily that the "instruction placed the determination as to the defendant's meeting his burden of production, a legal issue already ruled upon by the court, back in the jury's hands for its consideration without any advice as to how to make that determination." We disagree. While the burden of production

---

[13] After the judge's instructions, the "[e]ntire discussion at sidebar [was] inaudible . . ., sidebar microphone not turned on." At the earlier charge conference, which was lengthy, whatever objections the defendant had did not emerge, apart from an objection to the use of the word "inadvertently." On appeal, the defendant argues that "[t]he introduction of the term 'inadvertent' in the instructions without explanation also could have confused the jury." The word "inadvertently," as the Commonwealth notes, is taken from Farley, 64 Mass. App. Ct. at 858 ("It is apparent from the language of G. L. c. 140, § 131(m), and the firearms licensing scheme as a whole, particularly when considered in light of legislation that was enacted within the same time frame, that the Legislature intended to exempt from the imposition of criminal sanctions those whose licenses became invalid inadvertently, but who would otherwise not be disqualified from holding a valid license"). We see no error.

was, indeed, a legal issue for the judge, the question whether the Commonwealth had met its burden of disproving the defendant's affirmative defense was for the jury, as the judge properly instructed.

In addition, use of the expression "[o]nce sufficient evidence of the defense is presented" was not error. The words did not imply that the evidence must come from the defendant, or that it was his burden to produce evidence of his defense. Cf. Commonwealth v. Colantonio, 31 Mass. App. Ct. 299, 308 (1991) ("[T]he charge as a whole conveyed to the jury that the burden remained with the Commonwealth throughout to prove beyond a reasonable doubt that the defendant did not [qualify for the G. L. c. 140, § 131(m) exception]").

b. Consciousness of guilt instruction. The defendant also challenges the consciousness of guilt instruction, as he did at trial. The basis for the argument appears to be that there was no evidence from which an inference of consciousness of guilt could reasonably be drawn. A consciousness of guilt instruction may be given where "there is an 'inference of guilt that may be drawn from evidence of flight, concealment, or similar acts,' such as false statements to the police, destruction or concealment of evidence, or bribing or threatening a witness." Commonwealth v. Stuckich, 450 Mass. 449, 453 (2008), quoting from Commonwealth v. Toney, 385 Mass. 575, 584 (1982). "To

determine whether a consciousness of guilt instruction is warranted, a judge need only assess the relevancy of the evidence."  Commonwealth v. Morris, 465 Mass. 733, 738 (2013).

Here, Ball testified that, before he came to a complete stop, the defendant slowly traveled another 500 feet while Ball observed the defendant's arm and shoulder moving up and down in an apparent attempt to cover something behind the passenger's seat.  In addition, in response to Ball's inquiry about whether he had any weapons, the defendant said only that he had a knife, and not that he had the gun he knew was in the tool bag behind the seat.  This evidence permitted the prosecutor to argue, as she did, that the defendant knew when he was stopped that he was not authorized to possess a firearm.  There was no error.[14]

5.  Motion for new trial.  We review the denial of a motion for new trial "only to determine whether there has been a significant error of law or other abuse of discretion."

---

[14] The defendant also argues that permitting Ball's testimony relating to gang activity, his description of the defendant's "furtive gestures," and also prior intelligence regarding the defendant's firearm license status was prejudicial error.  These claims are without merit.  With regard to "gang activity," Ball testified only that he was assigned to the gang unit as part of establishing his experience and training.  He said nothing about the defendant participating in any gang activity.  In addition, Ball never stated that the defendant made furtive gestures prior to coming to a stop, but merely testified as to his observations of the defendant's shoulder and arm moving up and down in an effort to cover something behind the seat.  Finally, Ball's testimony that he knew that the defendant did not have a valid firearm license was stricken and the jurors were told to disregard it.  There was no error.

Commonwealth v. Acevedo, 446 Mass. 435, 441 (2006), quoting from Commonwealth v. Grace, 397 Mass. 303, 307 (1986).  See Mass.R.Crim.P. 30(b), as appearing in 435 Mass. 1501 (2001).  "A motion for new trial 'is addressed to the sound discretion of the trial judge, and . . . will not be reversed unless it is manifestly unjust, or unless the trial was infected with prejudicial constitutional error.'"  Acevedo, supra, quoting from Commonwealth v. Tennison, 440 Mass. 553, 566 (2003).  "A reviewing court extends special deference to the action of a motion judge who was also the trial judge."  Commonwealth v. Rosario, 460 Mass. 181, 195 (2011), quoting from Grace, supra.  After review, we are satisfied that the trial judge did not abuse her broad discretion in denying the defendant's motion for a new trial.[15]

Judgment affirmed.

Order denying final corrected
     motion for new trial
     affirmed.

---

[15] We have carefully considered the remaining issues raised in the defendant's brief and find them to be without merit.