HANLON, J.
*717 After a jury trial, the defendant was convicted of disconnecting and removing fire protection devices -- smoke detectors -- in violation of G. L. c. 148, § 27A.[1] The statute requires that such devices may not be removed or disconnected without a permit.[2] The defendant appeals, arguing that, because the procurement of a permit is an element of the crime, the judge *718 erred in denying his motion for a required finding of not guilty and in improperly instructing the jury. The issue is whether failure to obtain a permit to remove the fire protection devices is an element of the offense -- which the Commonwealth always must prove beyond a reasonable doubt -- or whether the defendant must raise the permit issue as an affirmative defense and produce some evidence to support it, in order to shift to the Commonwealth the burden of disproving it. Here, we agree with the judge that the defendant was entitled to raise the issue as an affirmative defense, but that, if he did not, the Commonwealth was not required to disprove it. For that reason, we affirm the judgment.
Background. The jury heard the following evidence. On the afternoon of July 29, 2015, Sergio Munos was the property manager of the three-story, two-family house at 12 Munroe Avenue in Waltham; a family lived on one side of the house and the other side functioned, essentially, as a rooming house with seven bedrooms.[3] Munos was responsible for renting those bedrooms as well as for providing maintenance for the entire property, along with several other properties.
*1243 Around noon, Munos drove into the parking lot of the house, intending to address an issue a tenant had reported to him -- a leaking toilet. As he did so, he observed the defendant walking from the direction of the back door of the house toward trash barrels a short distance away; the defendant was carrying a large plastic grocery bag. Munos could see that fire extinguishers and smoke detectors were in the bag that the defendant was carrying. When Munos approached the defendant to speak with him, the defendant looked "surprised," walked quickly to the trash barrels, and threw the bag he was carrying into one of the barrels. When Munos tried to speak to him, the defendant walked away, "scream[ing]" at Munos but refusing to answer any questions.
Munos recognized the contents of the bag -- now in the trash barrel -- as two fire extinguishers and two smoke detectors that he previously had installed in the house. The fire extinguishers *719 had been installed in the kitchen and in the common area; the smoke detectors had been installed on the second-floor hallway ceiling and on the third-floor hallway ceiling. Munos took photographs of the items in the trash barrel and then retrieved the items from the trash, reinstalled them back in the house, and contacted the police.[4] The owner of the property testified that, at the time of the incident, eviction proceedings against the defendant were already pending.
After the Commonwealth rested, defense counsel moved for a required finding of not guilty, arguing that the Commonwealth had offered no evidence that the defendant did not possess a permit to remove the smoke detectors. The judge denied the motion, ruling that the question of a permit was "a defense."[5]
The defendant testified in his own defense and denied removing the fire extinguishers or the smoke detectors; he claimed that he was out of the house the entire day. He also testified that he was present when a health inspector came to the house the following day, July 30, 2015. According to the defendant, the health inspector had come in response to the defendant's request to have the building inspected because of "mice, cockroaches, [and] soiled carpet." The defendant testified that he became aware of the missing smoke detectors only as a result of this health inspection. At the close of all of the evidence, during the charge conference, defense counsel renewed her argument that failure to obtain the necessary permit was an element of the Commonwealth's proof. The judge declined to give that instruction to the jury.[6]
In reviewing the denial of a motion for a required finding of not guilty, we assess the evidence in the light most favorable to the Commonwealth, along with reasonable inferences therefrom, to determine whether we are satisfied that the Commonwealth *1244 presented *720 "enough evidence that could have satisfied a rational trier of fact of each ... element beyond a reasonable doubt." Commonwealth v. Torres, 468 Mass. 286, 292, 10 N.E.3d 1065 (2014), quoting from Commonwealth v. Latimore, 378 Mass. 671, 677-678, 393 N.E.2d 370 (1979). The jury's inferences must only be reasonable and possible. Torres, supra.
The defendant argues that it was error to deny his motion for a required finding of not guilty and his request for a jury instruction on the issue of the necessary permit. He contends that, in cases where the behavior at issue is the norm, e.g., operating a motor vehicle, the Commonwealth bears the burden of proving that the behavior was unlicensed or uninsured. By contrast, for conduct that is generally prohibited, e.g., possession of a firearm, "the burden is on the defendant to come forward with evidence of the defense." Commonwealth v. Jones, 372 Mass. 403, 406, 361 N.E.2d 1308 (1977). In the defendant's view, handling fire protection devices is more like the former than the latter.
The issue for us, then, is whether, in the circumstances presented -- removing fire protection devices -- the absence of a permit is an essential element of the offense or an affirmative defense. We are satisfied that obtaining the necessary permit here is an affirmative defense.
"An affirmative defense is defined as a matter which, assuming the charge against the accused to be true, constitutes a defense to it; an 'affirmative defense' does not directly challenge any element of the offense." Commonwealth v. Farley, 64 Mass. App. Ct. 854, 861, 835 N.E.2d 1159 (2005), quoting from 21 Am. Jur. 2d Criminal Law § 217 (1998). Such a defense "involves a matter of justification particularly within the knowledge of the defendant on which he can fairly be required to adduce supporting evidence." Farley, supra, quoting from Model Penal Code § 1.12(3)(c) (1985). Pursuant to G. L. c. 278, § 7, "[a] defendant in a criminal prosecution, relying for his justification upon a license, ... or authority, shall prove the same; and, until so proved, the presumption shall be that he is not so authorized."
The cases citing G. L. c. 278, § 7, give us some guidance. See, for example, Jones, supra ("We sum up the established interpretation of G. L. c. 278, § 7, as it applies to prosecutions under G. L. c. 269, § 10 [a ]. The holding of a valid license brings the defendant within an exception to the general prohibition against carrying a firearm, and is an affirmative defense. Absence of a license is not 'an element of the crime,' as that phrase is commonly used. In the absence of evidence with respect to a license, no issue is *721 presented with respect to licensing. In other words, the burden is on the defendant to come forward with evidence of the defense. If such evidence is presented, however, the burden is on the prosecution to persuade the trier of facts beyond a reasonable doubt that the defense does not exist") (citation omitted).
The courts consistently have followed that analysis in the cases involving possession of a firearm. In Commonwealth v. Humphries, 465 Mass. 762, 767, 991 N.E.2d 652 (2013), the court reiterated: "[A] defendant charged with a possessory firearms offense can raise the defendant's own license as a defense. See Commonwealth v. Gouse, 461 Mass. 787, 802-803, 965 N.E.2d 774 (2012) ..., and cases cited. Such a defendant must, prior to trial, provide notice of intent to raise the defense of license, see Mass. R. Crim. P. 14(b)(3), and must produce 'some evidence' of license at trial before the burden shifts to the Commonwealth to prove the absence of the defendant's license beyond a reasonable *1245 doubt." See Commonwealth v. Indrisano, 87 Mass. App. Ct. 709, 712, 35 N.E.3d 722 (2015).
The courts have employed the same analysis in other contexts. In Commonwealth v. Jefferson, 377 Mass. 716, 718, 387 N.E.2d 579 (1979), the court said that "[t]he same principles apply to a prosecution under G. L. c. 94C, § 27 [, which made unlawful possession of hypodermic needles or syringes, with certain exceptions]. The 'authority' which the defendant must show extends beyond a license or other governmentally issued permission. It includes, for example, the 'authority' to possess a hypodermic needle which may arise from the defendant's status as a student in a school described in the statute or which may arise because the defendant is a patient who has a written prescription from a physician. Placing on the Commonwealth the burden of disproving each of the numerous exemptions under G. L. c. 94C, § 27, would make successful prosecutions under the statute virtually impossible." In Commonwealth v. O'Connell, 438 Mass. 658, 664-665, 783 N.E.2d 417 (2003) (citation and footnote omitted), the court held that "authority [to sign checks on behalf of an authorized signator] may be raised as a defense, and, if so raised, the Commonwealth then bears the burden of proving beyond a reasonable doubt the absence of authority. See G. L. c. 278, § 7. To raise the defense of acting under authority, the defendant must so notify the prosecutor and file a copy of the claim with the clerk of the court where the case is pending. Mass. R. Crim. P. 14(b)(3) .... Failure to do so renders the claim of authority unavailable as a defense." See Commonwealth v. Dzewiacin, 252 Mass. 126, 130-131, 147 N.E. 582 (1925) (Where *722 a defendant is charged with transporting intoxicating liquors, " G. L. c. 278, § 7, provides that a defendant in a criminal prosecution who relies for his justification upon a license, appointment or authority, shall prove the same, and until so proved, the presumption is that he is not so authorized").
By contrast, the Supreme Judicial Court explicitly has distinguished the cases involving records from the Registry of Motor Vehicles from application of G. L. c. 278, § 7. See Commonwealth v. Munoz, 384 Mass. 503, 507, 426 N.E.2d 1161 (1981) ("The Commonwealth, in urging us to apply G. L. c. 278, § 7, to this case and to require the defendant to bear the burden of producing evidence showing insurance, points to the relative ease with which the defendant could produce a document proving insurance if the car were in fact insured as compared with the difficulty the Commonwealth has in proving noninsurance. The Commonwealth acknowledges, however, that under G. L. c. 90, § 34I, the Registrar of Motor Vehicles is obliged to maintain information as to insurance on every car registered in the Commonwealth and is required to make this information available to any person on request. Even assuming that it may be difficult for the Commonwealth to prove noninsurance, this obstacle does not warrant the application of c. 278, § 7, in view of the fact that noninsurance is an element, in fact, the central element of a prosecution under G. L. c. 90, § 34J. Accordingly, we conclude that G. L. c. 278, § 7, is inapplicable to prosecutions under G. L. c. 90, § 34J").
We are persuaded that removing fire protection devices, with all of the safety concerns that activity presents, is more like those cases (possession of a firearm or ammunition, possession of a hypodermic needle, signing another's name to a check, or transportation of alcohol during Prohibition) that prohibit the behavior absent an affirmative showing from the defendant that his or her actions were authorized. The facts of this case, concerning a three-story rooming house with seven unrelated *1246 tenants occupying one side of a two-family house and a family occupying the other side, highlight the importance of the necessary fire protection devices and the safety interests protected by the statute.
Both Humphries and O'Connell highlight another flaw in the defendant's argument. In order to raise a defense of authority, rule 14(b)(3) of the Massachusetts Rules of Criminal Procedure, as appearing in 442 Mass. 1525 (2004), requires a defendant to provide pretrial notice that he or she intends to rely on a defense of authority or license. Here, the defendant offered no such notice and, instead, testified that he had *723 nothing to do with the removal of the smoke detectors. As a result, a defense of authority was unavailable to him. Cf. Commonwealth v. Jefferson, 461 Mass. 821, 832, 965 N.E.2d 800 (2012).
Conclusion. In sum, reviewing the evidence in the light most favorable to the Commonwealth, rational jurors were entitled to find that the defendant committed the charged offense. See Torres, 468 Mass. at 292, 10 N.E.3d 1065. We see no error in the denial of the defendant's motion for a required finding of not guilty.[7]
Judgment affirmed.

The defendant was also charged with larceny of $250 or less based on the allegation that he stole two fire extinguishers; he was acquitted of that charge.

Pursuant to G. L. c. 148, § 27A, as amended by St. 2005, c. 123, § 3, it is unlawful to "shut off, disconnect, obstruct, remove or destroy, or cause or permit to be shut off, disconnected, obstructed, removed or destroyed, any part of any sprinkler system, water main, hydrant or other device used for fire protection or carbon monoxide detection and alarm in any building owned, leased or occupied by such person or under his control or supervision, without first procuring a written permit so to do from the head of the fire department of the city or town wherein such building is situated, which permit such head is hereby authorized to issue subject to such terms and conditions as, in his judgment, protection against fire and the preservation of the public safety may require."
The "[h]ead of the fire department" is defined as "the chief executive officer of the fire department in a city, town, fire district, the 104th fighter wing fire department or the Massachusetts military reservation fire department having such an officer, otherwise the fire commissioner, board of fire commissioners or fire engineers, or commissioner of public safety; and, in towns not having a fire department, the chief engineer, if any, otherwise the chairman of the board of selectmen." G. L. c. 148, § 1, as amended through St. 2014, c. 313, § 9.

Munos testified that there were four bedrooms on the third floor, two on the second floor, and one bedroom on the first floor along with a kitchen and a living room.

The police did not obtain the photographs; Munos's cellular telephone (on which he took the pictures) broke shortly after this incident and he was thereafter unable to recover the photographs from it.

Much of this side bar conference was "indiscernible" to the transcriber, but the main points are clear enough.

While the parties used the terms remove and disconnect, and both terms appear in the statute, the judge instructed the jury that "[i]n order to prove [the defendant] guilty of this offense, the [Commonwealth] must prove ... that the defendant disconnected or caused to be disconnected or rendered inoperable a fire protection device[,] ... the fire protection device was located in a residence or a building where individuals reside[,] ...[a]nd ...that the defendant did so with the intent to disconnect such fire protection device."

Because the Commonwealth's burden of proof did not include absence of a permit as a necessary element of the offense, we also conclude that the judge properly instructed the jury on the law.